**Alyce Ann McCANN, Respondent,**

v.

**Charles H. McCANN, Appellant.**

No. 25228.

Kansas City Court of Appeals.

Missouri.

Dec. 1, 1969.

**324** ■ ■

Miner, Martin & Speiser, Hugh A. Miner, St. Joseph, for appellant.

Grace S. Day, St. Joseph, for respondent.

SHANGLER, Judge.

The parties, plaintiff Alyce A. McCann and defendant Charles H. McCann, were married on October 16, 1965. Two children were born to them, Stephanie Ann, who was two and one-half years of age at the time of the divorce, and Charles Logan, then one and one-half years of age. Plaintiff was granted a divorce on her petition and was granted the permanent custody of the children, as well. She had waived any claim to alimony. Defendant was allowed the right of reasonable visitation and ordered to pay the sum of $35 per week per child for their support. The single question presented for our review is whether such an allowance, under the circumstances of the evidence, was so excessive as to amount to a manifest abuse by the trial court of its discretion.

Although a contest of the issues was framed by the pleadings, the proceedings, including the trial, were largely consensual. Plaintiff and defendant, only, testified. Defendant was called to the stand at the court's instance. Except for defendant's alleged marital misconduct which, in any event, was not a live issue, the parties' testimony was reciprocally supporting.

The undisputed evidence thus developed established that defendant's total net monthly earnings were approximately $550. Of this amount, $510 was derived from his employment in the Headstart Program of the Economic Opportunity Corporation. The additional $40 monthly was earned by rolling newspapers during the weekends. The sum of defendant's monthly expenses was $378.50 and included $112.50 for rent, utilities $60, food $70, car expense $45, insurance $10, clothing $15, entertainment $10 and $56 for miscellaneous items.

Plaintiff was unemployed. After the divorce, she intended to continue to baby-sit for compensation as she had done during the marriage, but we are not informed of her monetary expectations for doing so. She indicated, as well, that with little effort she could resume her pre-marital employment with Household Finance Corporation. (We observe, parenthetically, that although the ages of the parties are not disclosed, we assume they are young adults. Neither are we informed as to the educational achievements or vocational talents of either of them.) She gave no evidence as to specific items of expense relating to the care and maintenance of the two children. Notwithstanding, she deemed $20 per week per child a reasonable and adequate sum for the support of the two children and requested the court to approve an allowance in that amount, as contemplated in their Separation Agreement. Among its other terms, the Separation Agreement provided for the transfer by defendant to plaintiff of specified United States Savings Bonds, $900 in value. Presumably, defendant retained a number of bonds of equivalent value. The parties also agreed to distribute personal household items and the de-

fendant promised to reimburse plaintiff $200 for "expense involved after separation". Although not appearing among the terms of the written Separation Agreement, defendant additionally agreed "to be responsible for" the cost of medical and hospital care for the children. Plaintiff appeared to harbor no doubt of her ability to properly care for the children on such a fiscal grounding.

Defendant, as we have stated, was called upon to give his testimony at the instance of the court. From him it was adduced that he had some familiarity with the cost of providing for the needs of children as his work related to that subject. He testified that the cost of food for the two children would be $20 per week ($1040 per year), clothing at $100 per year, medical expenses at $250 per year, keeping of the home at $60 per month ($720 per year) and entertainment at $10 per month ($120 per year), for a total annual expense of $2230, or an equivalent weekly expense of approximately $21.50 per child. The court, nevertheless, expressed its discomfiture at the prospect of defendant retaining $378.50 from his monthly earnings for his personal expenses, while being asked to allow only $40 per week for the support of both children. Thereupon, the court granted plaintiff a decree of divorce, granted to her custody of the two minor children, Stephanie and Charles, allowed defendant the right of reasonable visitation and awarded plaintiff the sum of $35 per week per child for their support. Appellant contends that the trial court abused its discretion in having entered the support allowance of $35 per week per child because that amount was based neither on the father's ability to pay, nor on the children's actual needs. Appellant also contends that in arriving at the amount given in judgment for support, the court improperly considered the possibility that the plaintiff might seek and receive government aid for the support of the children.

The amount to be awarded as child support is a matter resting in the sound discretion of the trial court. That award will not be disturbed except for a manifest abuse by the court of its discretion. The only question before us is whether or not that discretion has been abused. That is the extent of our review of such matters. Royster v. Royster, Mo. App., 420 S.W.2d 1, 4; Bettinger v. Bettinger, Mo.App., 355 S.W.2d 354, 359. Neither can the proper amount to be awarded be determined by an invariable rule. Judicial precedents help to provide guidance, but each case must rest on its own facts and circumstances. 1 A.L.R.3d 382, 392–393; Wade v. Wade, Mo.App., 429 S.W.2d 317, 319. The primary duty of the father to support his minor children and to provide for their reasonable needs is derived from the common law, is based upon statute and is an expression of sound public policy. Lodahl v. Papenberg, Mo.Sup., 277 S.W.2d 548, 551, and In re Scarritt, 76 Mo. 565, 584. The two correlative considerations which, generally, govern the amount to be given in support of minor children are the ability of the father to pay and the needs of the children. Montgomery v. Montgomery, Mo.App., 257 S.W.2d 189, 197; Gianformaggio v. Gianformaggio, Mo.App., 341 S.W.2d 293, 297. When assessing these considerations, the courts have generally devoted substantial attention to the issue of the necessary living expenses of those involved.

In the case before us, the reasonable needs of the children, as well as their cost, were sufficiently well defined to sustain a valid judgment for support. It is clear, however, that no such judgment could have been based on the testimony of Mrs. McCann alone, as she gave no evidence as to items of need or their cost. Nelson v. Nelson, Mo.App., 357 S.W.2d 223; McCullough v. McCullough, Mo.App., 402 S.W.2d 623, 628. Mr. McCann supplied that lack and, we assume, it was at least for that purpose that the court called upon

him to give testimony. Whereas Mrs. McCann had concluded, without attention to specific items, that the sum of $20 per week per child would be adequate for their needs, Mr. McCann's testimony tended to establish that amount at approximately $21.50 per week per child. It appears that both parties had independently settled upon $20 per week per child as the basis of an agreement between them even before its contractual embodiment. It is equally apparent that Mr. McCann had committed himself, additionally, to bear the cost of the children's medical and hospital expenses. By Mr. McCann's reckoning, the prospective annual cost of those items was $250. Subtracting that amount from the projected total annual expense of $2230 required for the proper support of the children, the adjusted weekly expense per child would fall below $20 per week. We are aware that Mr. McCann's testimony as it related to the projected cost of items of support and as to his own needs was undocumented. "As such, they are subject to distortion and exaggeration * * * and need not be accepted by the trial court as concrete fact". Houston v. Snyder, Mo. App., 440 S.W.2d 156, 159; 1 A.L.R.3d 324, 338–339. In such cases, however, a court usually does not require that items be proved with " * * * the particularity * * * which would be required were a creditor suing". Houston v. Snyder, supra, p. 159. Mr. McCann was qualified both by observation and experience to testify concerning the cost of supporting a family. 32 C.J.S. Evidence p. 255. His testimony on that subject was informed and forthright and, although the trial court was not required to accept it as "concrete fact", it was substantial evidence of the reasonableness of the cost of meeting the children's needs.

■ We look also to the terms of the Separation Agreement for some suggestion of what the parties considered a reasonable child support allowance. The Agreement was executed on December 23, 1968, contemporaneously with the trial of the case and entry of judgment. It is fair to assume that the parties were then particularly mindful of their current needs and of defendant's ability to meet those needs. The parties had left the divorce court free from debt, and had within the brief span of their marriage accumulated the quantity of savings bonds we have described. We are impressed with their aptitude for domestic management. Their assessment of their children's needs and of the father's resources to meet those should not be ignored. That provision of the Agreement whereby defendant undertook to pay, and plaintiff agreed to accept, $20 per week for the support of each child was merely advisory and was not binding upon the court. Aronberg v. Aronberg, Mo.App., 316 S.W.2d 675, 680; Houston v. Snyder, supra, p. 160. It is in itself, however, some evidence of what the parties considered to be the reasonable needs of the children and what defendant was reasonably able to pay.

■ The most pernicious aspect of the trial court's judgment, however, is that it tends to be self-defeating. It is so large as to impair defendant's economic position. If his testimony is to be believed, his necessary monthly expenses were $378.50. Defendant's computations of those needs owned those frailties attending all such evidence, as we have described. We share the trial court's wonderment at the expressed cost of his lodgings ($112.50 per month) and utilities ($60 per month) in face of the actual $40 per month cost of plaintiff's quarters and utilities. Nonetheless, even if we arbitrarily reduce this composite item by $60 per month, defendant's necessary expenses would still exceed $300 per month. Under these circumstances, the support judgment of $35 per week per child would eventually become personally ruinous to him. That judgment would require a monthly payment in excess of $300 for child support from his total net monthly wages of $550. The balance

would not be sufficient for his own basic wants. The ultimate effect of the judgment would be to deny defendant such a reasonable manner of living as would enable him to carry on his work and thereby comply with the order of support. We believe the judgment to be so excessive as "under the existing circumstances destroy (defendant's) incentive and possibly defeat the purpose sought to be accomplished in the end". Sellars v. Sellars, Mo.App., 274 S.W.2d 509, 513.

Appellant's final contention is that the consideration by the trial court that the respondent mother might turn to a governmental agency for monetary aid for her dependent children prompted the excessive child support judgment which was entered. In responding to this point, we need not restate the extended colloquies between the court and each party-witness. It is obvious that the court's predisposition was to disbelieve the testimony of the parties. The respondent's earnest and sensible responses to the court's questioning relating to the support of the children were shunted aside. Even from this distance, we sense her bewilderment. The end result was the rejection by the court of the support arrangement suggested by the parties and the entry of that judgment from which defendant now appeals. The court thereupon gratuitously informed the Buchanan County Welfare Office by letter that the divorce had been granted, and described the evidence given by the parties concerning child support in pejorative terms. The letter concluded that "it would be well for you to have this letter in your file if an application is made for Aid to Dependent Children in an effort to unload these children on the taxpayers".

Although the duty of the parents to support their children "may be rested * * * upon the interest of the state as parens patriae of children and of the community at large in preventing them from becoming a public burden * * *." (39 Am.Jur., Parent and Child, pps. 632–3), "(t)he measure of the father's obligation is the child's needs in relation to the father's ability". 67 C.J.S. Parent and Child p. 691. (See, also, the authorities already cited.) However, neither the common law nor statutory enactment requires a father to render himself destitute in order to support his children. They are entitled to be maintained according to the station in life occupied by a person of the father's financial standing. McCullough v. McCullough, supra, p. 628; Nelson v. Nelson, supra, p. 226. In the case before us, the court's duty extended, essentially, to a determination of the reasonable needs of the children and to have them met according to the father's reasonable ability to do so. The specter of the possibility of welfare assistance to the children was alien to that inquiry. The court's judgment was decisively influenced by that extraneous consideration. The result was a child support award so excessive as to amount to an abuse of discretion.

The children are very young. The record shows their needs, currently, are quite predictable. The father has committed himself to pay for the medical and hospital expenses. We enter that judgment the trial court should have reached. Under the circumstances, the sum of $20 per week per child is a reasonable allowance for their support and the trial court's judgment is modified to that extent.

That portion of the judgment of the trial court relating to the allowance for the support of Stephanie Ann McCann and Charles Logan McCann is set aside with directions that the court enter judgment for their support at $20 per week per child.

All concur.