L_____ J_____ S_____,
Plaintiff-Respondent,

v.

V_____ H_____ S_____,
Defendant-Appellant.

No. KCD 26748.

Missouri Court of Appeals,
Kansas City District.

Sept. 3, 1974.

Allan J. Fanning, Kansas City, for defendant-appellant.

Arthur J. Kase, Kansas City, for plaintiff-respondent.

Before PRITCHARD, P. J., and SWOFFORD and SOMERVILLE, JJ.

SOMERVILLE, Judge.

This case involves the tragic disruption of a marriage blessed with twelve children, eleven of whom were minors (ranging from three years to nineteen years in age) living at home at the time of trial on March 5, 1973. A combination of inflationary times and a large family subjected the marriage to internecine stresses, the measure of whose indirect effect in bringing about disruption of the marriage is incapable of ascertainment.

On March 5, 1973, the trial court entered judgment whereby it granted the wife a divorce, awarded custody of the eleven minor children to her and child support in the amount of $700.00 per month, attorney fees in the amount of $250.00, and granted the husband "reasonable visitation" rights.

On March 19, 1973, the husband filed a motion for a new trial, the cardinal thrust of which was that the amount awarded for child support was excessive. On April 24, 1973, the trial court, on its own motion, without a hearing or notice to the husband, amended the judgment entered March 5, 1973, and, additionally, awarded the wife alimony in gross in the amount of Ten Thousand and no/100 Dollars ($10,000.00) and "attorney fees in the sum of Seven Hundred Fifty ($750.00) Dollars total, with credit in the sum of Two Hundred Fifty ($250.00) Dollars paid".

On April 25, 1973, the husband's motion for a new trial was overruled, and he timely appealed the judgment entered March 5, 1973, and the amendment thereof by the trial court on April 24, 1973.

The husband inveighs against the judgment (and amendment thereof) entered by the trial court on five grounds. *First,* he claims, (a) there was a lack of substantial evidence to prove that he was guilty of "indignities" that would entitle the wife to a divorce or to prove "reasonable exertions" on the wife's part to relieve the indignities complained of, and (b) he was entitled to a divorce on his cross-petition because there was substantial evidence to prove "indignities" committed against him by the wife and that he had exercised "reasonable exertions" without success to relieve such indignities. *Second,* he claims the trial court erred "by not perfecting its subject matter jurisdiction by requiring proof of the date and circumstances when respondent [the wife] signed the affidavit attached to her petition and by not requir-

**4** ■ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

ing proof of the required residence of respondent in Missouri." *Third,* he claims the trial court erred and abused its discretion by the cumulative effect of, (a) refusing to honor a stipulation of the parties to allow the husband to submit evidence as to necessary family expenses, (b) in limiting the issues before the husband's testimony was completed to "the fault of the parties" and the amount the husband "could pay", (c) by permitting the wife's counsel to interrupt, argue with, and insult the husband, and (d) by taking judicial notice of speculative and incompetent opinions about "income tax deductions". *Fourth,* he claims the trial court abused its discretion in awarding child support payments to the wife in the amount of $700.00 per month out of net earnings of the husband amounting to $818.00 per month because such was beyond the husband's ability to pay, was grossly excessive, and left the husband with no ability or incentive to continue gainful employment. *Fifth,* he claims the trial court erred, (a) in awarding attorney fees in the original judgment because the wife introduced no evidence to support an award of attorney fees and (b) in awarding alimony in gross and additional attorney fees in its modification of the original judgment because the wife introduced no evidence to support an award of additional attorney fees and had waived alimony, and the court lacked jurisdiction to award alimony in gross and additional attorney fees because more than thirty days had expired from the date the original judgment was entered and the time was not extended by the husband's motion for a new trial. This court can not refrain from noting that the five principal points asserted by the husband are far from models for the timely dispatch of cases on appeal.

■ This being a divorce case, it is the duty of this court to review the case de novo upon both the law and the evidence, giving due deference to the trial court's assessment of the credibility of the witnesses in view of its opportunity to personally ob-

serve them; and although the judgment of the trial court should not be set aside unless "clearly erroneous" such is not a mandate prescribing judicial "blindness" because in reviewing this case de novo this court must be cognizant of the further duty to reach its own conclusions based on the law and the evidence presented by the case. Schwarz v. Schwarz, 427 S.W.2d 734 (Mo.App.1968); Heibel v. Heibel, 366 S.W.2d 37 (Mo.App.1963); and Rule 73.-01(d), V.A.M.R.

■■ In addressing the husband's first point it should be noted that Section 452.-010, RSMo 1969, V.A.M.S. (in effect and controlling at the time this case was tried), in prescribing "indignities" as a cause for divorce, clearly failed to define the term. Thus, no "hard and fast" statutory definition exists, and, necessarily, each case alleging "indignities" must be largely determined according to its own peculiar facts and circumstances and rests in the conscience of the court. O'Hern v. O'Hern, 206 Mo.App. 651, 228 S.W. 533 (1921), and Frankenberg v. Frankenberg, 229 S.W.2d 279 (Mo.App.1950). This court many years ago in Hoffman v. Hoffman, 224 S.W.2d 554, 561 (Mo.App.1949) spelled out the constituent elements of "indignities" in the statutory context, as follows:

"It has long been established as the law that where the action is based on indignities, such indignities, in the statutory sense, must amount to a species of mental or physical cruelty, or of injury accompanied with insult or hatred, and they must be such as cannot be relieved by any exertions of the injured party. Indignities such as to warrant the granting of a divorce, ordinarily must amount to a continuous course of conduct. A single act or word, or occasional acts or words, will not suffice. The course of conduct must be such as to connote settled hate and a plain manifestation of alienation and estrangement. Indignities are such acts as consist of unmerited contemptuous conduct, or words and acts

of one spouse toward the other which manifests contempt, or contumely, incivility or injury accompanied with insult and amounting to a species of cruelty to the mind."

■ Bearing the above in mind, the wife's evidence disclosed the following conduct on the part of the husband which extended over a period of years. He was penurious with both the wife and the children born of the marriage. In this connection the wife felt compelled to seek employment outside the home, not for the purpose of seeking her own independence, but to provide groceries and help pay the children's tuition at parochial schools. Surely the wife's efforts in this respect constituted a "reasonable exertion" on her part to alleviate the husband's penurious attitude toward her and the children.

The husband, notwithstanding his penurious attitude toward his wife and children, apparently had funds to engage in excessive drinking and did so with considerable regularity. On five or six occasions the wife picked the husband up at the police station because he was too drunk to drive. The husband has failed to point out any "reasonable exertion" that the wife could have exercised to overcome his proclivity for "strong drink".

According to the wife, the husband constantly associated with other women and would come home drunk at two or three o'clock in the morning "and tell me how he had been out with other women and played around with them". The husband made no effort to deny this. Moreover, he has failed to point out any "reasonable exertion" that the wife could have exercised to overcome his promiscuous conduct. In all solemnity, the fact that she bore him twelve children during twenty-one years of marriage, nine during the last twelve years thereof, precludes any effective argument on the husband's part that his promiscuous bent could have been assuaged by the wife.

The husband was unduly severe in his punishment of the children over trivial matters. He would kick or spank them with a wooden paddle until they were "black and blue". The twelve year old son, at the insistence of school officials, was taken to a psychiatrist "because he was so deeply scared of his father." The mother did not object to the father properly disciplining the children, but she did object to his severe disciplinary methods when they were disproportionate to the matter for which a child was being punished. The father's severe disciplining of the children was a frequent subject of discussion between the mother and father, indicating a positive effort on the part of the mother to relieve the situation.

The husband has cited numerous cases which he vigorously contends constitute controlling authority for resolving his first point in his favor. This court has carefully read the cases relied on by the husband, and, without exception, they are all distinguishable on their facts from this case. A fair analysis of the cases cited by the husband reveals that while they involve one or more indignities comparable to those present in this case, none involve *all* of the indignities borne out by the wife's evidence. Even though one or several comparable indignities, alleged and proven, might raise doubt in the mind of a court as to the propriety of granting a complaining party a divorce, no such doubt exists in this case by virtue of the number, nature and cumulative effect of the indignities substantiated by the wife's evidence. Juxtaposing the number, nature and cumulative effect of the indignities present in this case with the constituent elements of "indignities" in the statutory context delineated in Hoffman v. Hoffman, supra, this court rules that the husband was guilty of such "indignities" as would entitle the wife to a divorce.

The husband in his first point additionally claims that he, rather than the wife, was entitled to a divorce because of "indignities" committed by the wife. This contention is substantially premised on two alleged "indignities". One, that the wife refused to engage in sexual intercourse

with him, and two, the wife kept a dirty house.

The husband relies on Cox v. Cox, 493 S.W.2d 371 (Mo.App.1973) to support his somewhat adamant position that the wife's refusal to engage in sexual intercourse with him constituted an "indignity" entitling him to a divorce. It is explicit in *Cox* that refusal by a spouse to engage in sexual intercourse constitutes an "indignity" only if the refusal is unexcusable or unreasonable. Was the wife's refusal in this case excusable or reasonable? This query is graphically answered in the affirmative by the following testimony of the wife:

"Q. Did you ever tell him you wouldn't live with him as his wife?

A. Yes, I said that if he continued to come home drunk and get me up at 2:00 and 3:00 o'clock after working all night and want to sit up and argue. He would tell me how he had been out with other women and played around with them. Do you think I'm going to bed with something like that?

Regarding the husband's complaint that his wife kept a dirty house, several considerations appear that allay any qualms in ruling that such did not rise to the level of a statutory indignity. Obviously the husband refuses to face up to a basic reality—eleven children ranging from three years to nineteen years in age pose monumental housekeeping problems—especially when the mother has been compelled to seek employment ouside the home to help meet basic family expenses. An insight into the husband's attitude in this respect is revealed by the following testimony he gave, "I was raised in a fairly well kept house and it constantly ate at me." Such is indicative of a degree of fastidiousness on the part of the husband that is out of tune with the realities involved in caring for and rearing such a large family when the wife, in addition to her duties as a homemaker, is engaged in work outside the home.

The husband's first point is ruled against him in all respects.

■■ The second point asserted by the husband is, legally speaking, more intriguing than imposing. The wife's petition for divorce was accompanied by the statutory affidavit required by Section 452.040, RSMo 1969, V.A.M.S., to give the trial court jurisdiction over the subject matter. The jurat thereto was complete in all respects, save one. For some unexplainable reason the notary public who acknowledged the affidavit made by the wife omitted the date of the acknowledgment. The main fault leveled in the second point is that omission of the date in the jurat rendered verification of the wife's petition for divorce fatally defective, thus depriving the trial court of jurisdiction over the subject matter. Neither party has cited any authority dispositive of the issue. This court's independent research impels the conclusion that omission of the date in a jurat does not render a petition which is required to be verified fatally defective. In Land Clearance for Redevelopment Auth. v. Zitko, 386 S.W.2d 69, 78 (Mo. banc 1965), relative to a jurat accompanying an affidavit attached to an application for change of judge, the court noted, "[a] jurat need only consist of a statement 'sworn to and subscribed' before the notary public . . .". See also Order of Aztecs v. Noble, 174 S.W. 623 (Tex.Civ.App. 1915), holding that omission of the date in a jurat does not render an otherwise properly verified pleading fatally defective. The further contention made by the husband that the wife failed to prove that she had been a resident of Missouri "for at least one whole year next preceding the date of filing her petition for divorce" is absolutely devoid of substance or merit. The wife testified that at the time of trial she resided at a certain street address in Kansas City, Missouri. She further testified "We lived in Parkville, Missouri for approximately six years, we moved back to Kansas City, we have lived back here about eight years . . .". Joint in-

come tax returns and W–2 forms for the years 1969, 1970, 1971 were admitted into evidence disclosing the address of both the husband and wife to be the same as the present Kansas City, Missouri address at which the wife testified she was living.

The husband's second point is ruled against him in all respects.

The third point asserted by the husband, which is a composite of four contentions, lends itself to almost summary disposition. First, he contends that the trial court "erred and abused its discretion" in refusing "to honor the stipulation of the parties allowing appellant to submit evidence of the necessary family expenses". According to the husband, the so-called "stipulation of the parties" arises from the following colloquy between counsel on both sides and the court. The wife's attorney, during the course of his direct examination of the wife, indicated that he was going to question her concerning a list prepared by her of expenditures required to take care of the eleven children. The wife's attorney, immediately prior to questioning the wife about the itemized expenditures on the list, addressed the following question to the husband's attorney, "You have no objection to my giving the Court a copy of the list?" The husband's attorney replied, "Not so long as you have no objection to my list". Thereupon the court stated, "Very well, gentlemen, you may both give me a list of what you have." The fact is the wife's attorney never stipulated that the husband would be allowed "to submit evidence of the necessary family expenses." The complete absurdity of the husband's argument is that no stipulation was required for the introduction of such evidence. It concerned evidence of a live issue in the case. This absurdity is compounded by the fact the record divulges that, (a) every exhibit offered by the husband was received in evidence, (b) every relevant and proper question posed by the husband's attorney, both on direct and cross-examination, was permitted to be and was answered, (c) no of-

fer of proof of any kind was ever made by the husband or his attorney, and (d) no list of any kind (regardless of its evidentiary sufficiency or admissibility) was ever tendered by the husband or his attorney to the trial court. Second, the husband contends the trial court limited the issues "to the fault of the parties" and "the amount" the husband could pay before the husband's testimony was completed. He bottoms this on the following statement made by the trial court during the course of direct examination of the husband concerning records reflecting payment of certain medical bills on behalf of the minor children during the previous year:

"THE COURT: Gentlemen, it isn't necessary to argue about this. This is the kind of case where I am going to have to decide if I think either of them are entitled to a divorce and what he can pay from what he earns. It is not going to be based on what these bills are. I don't think we can handle it like that."

In view of the trial context in which the above statement was made, this court concludes that it is not susceptible of the constricted interpretation attributed to it by the husband. This conclusion is buttressed by the fact that, as heretofore noted, the record reveals that every exhibit offered by the husband was received in evidence and every relevant and proper question posed by the husband's attorney, both on direct and cross-examination, was permitted to be and was answered. Further, the record fails to disclose any additional statements or rulings by the trial court in any way thwarting the husband's presentation of his side of the case. Third, the husband asserts the trial court permitted the wife's counsel to interrupt, argue with and insult him. There is no indication in the record that the husband ever objected to or questioned the conduct now complained of. Nor is there any indication that the husband ever requested the trial court to reprimand or admonish the wife's counsel concerning the presently complained of conduct. Being a court tried

case, rather than a jury tried case, the complaint is devoid of viability. This court is capable of and has reviewed the record free from any alleged prejudice in the respects complained of by the husband. Fourth, the husband complains the trial court erroneously took "judicial notice of speculative and incompetent opinions about income tax deductions". The record completely fails to support this charge of error. The husband's third point is untenable in its entirety.

■ In his fourth point the husband contends that the award of $700.00 a month for child support for the eleven children, in view of his monthly net income, was beyond his ability to pay, grossly excessive and stripped him of ability and incentive to continue gainful employment. The evidence before the trial court supported the following findings: a reasonable monthly sum to maintain and support the eleven children is $1,042.00; the husband's monthly net income from his employment at the time of trial was $818.-05; none of the eleven children were being claimed by the husband as exemptions for federal and state income tax purposes in arriving at the $818.05 monthly net income; the husband's monthly gross income from his employment at the time of trial was $1,112.80, from which $294.75 was withheld per month for "federal, state, social security and city taxes, Blue Cross and Blue Shield premiums that covered the family and union dues"; a reasonable monthly sum to meet the husband's living requirements is $338.00; the husband's monthly net income from his employment prior to eruption of the marital difficulties was higher than at the time of trial; in addition to the income derived from his employment, the husband received approximately $30.00 a month "from some property" and $64.00 a year in stock dividends; the wife's monthly gross income at the time of trial from her employment as a waitress, including base pay and tips, was $440.00.

■ The amount to be awarded for child support rests in the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion on the part of the trial court. McCann v. McCann, 448 S.W.2d 323 (Mo.App.1969). Necessarily, the sole question on appeal regarding the amount awarded for child support is whether the trial court abused its discretion in awarding the amount arrived at. McCann v. McCann, supra; Royster v. Royster, 420 S.W.2d 1 (Mo.App.1967), and Bettinger v. Bettinger, 355 S.W.2d 354 (Mo.App.1962). No "hard and fast" rule exists to measure the proper amount of child support in a given case due to the broad spectrum of varying circumstances that exist from case to case, and, therefore, although prior decisions offer broad, helpful guidelines, each case necessarily turns on its own peculiar facts and circumstances. McCann v. McCann, supra, and Wade v. Wade, 429 S.W.2d 317 (Mo.App. 1968). Determination of the proper amount to be paid by a father to fulfill his primary duty of support requires achieving a proper balance between two basic considerations—(1) the needs of the child or children and (2) the ability of the father to pay. McCann v. McCann, supra; and Fugate v. Fugate, 510 S.W.2d 705 (Mo. App.1974). If the amount awarded for child support, although justified by the needs of the children, so exceeds the ability of the father to pay as to be self defeating in that it is economically ruinous and destructive of all ability and incentive to continue gainful employment, this court has not hesitated to view such as indicative of an abuse of discretion on the part of the trial court. McCann v. McCann, supra. See also Sellars v. Sellars, 274 S.W.2d 509 (Mo.App.1955). Based on the record before this court, the award of child support in the amount of $700.00 leaves the husband $118.05 from his monthly net income from his employment, plus approximately $30.00 per month from "some property" and an annual stock dividend in the amount of $64.00, to cover his own reasonable monthly living costs of $338.00.

This court would be derelict if it failed to point out that the record before it is de-

void of evidence from which to determine the increase that would inure to the husband's net monthly income if he claims some or all of the eleven children as exemptions for income tax purposes. The case was tried before preparation or filing of any 1972 income tax returns and there is no way of knowing whether the husband's pertinacious attitude about claiming the children as exemptions persisted at the time such income tax returns were subsequently prepared and filed. Faced with what the record does disclose, and the dilemma of what it fails to disclose, this court concludes that the trial court's award of $700.00 per month child support is economically ruinous to the husband and destructive of his ability and incentive to continue in gainful employment, and for these reasons the trial court is deemed to have abused its discretion in awarding $700.00 per month for child support. In doing so this court wishes to emphasize that the amount awarded by the trial court for child support was not excessive when measured solely by the needs of the children. However, when measured by both the needs of the children and the ability of the husband to pay, the monthly award for child support was excessive. After carefully reviewing all of the evidence, and at the same time refusing to penalize the children because of the husband's apparent obstinance about claiming any of them as exemptions for state and federal income tax purposes, this court concludes that a proper and reasonable monthly award in this case should be $650.00 per month. Therefore, the trial court's original judgment is modified to this extent. In doing so this court feels compelled to observe that this case presents that ever recurring tragedy where emotionally a husband and wife cannot afford to be married and financially they cannot afford to be divorced.

 The fifth point asserted by the husband is twofold. He claims, (1) there was not sufficient evidence to support an award of $250.00 attorney fees in the original judgment and (2) the court, among other reasons, lacked jurisdiction to award additional attorney fees and alimony in gross by the April 24, 1973 amendment to the original judgment. As to (1) the husband does not question the reasonableness of the amount awarded for attorney fees in the original judgment, and his argument denotes a decided lack of particularity respecting where the evidence is fatally defective to support the award of attorney fees in the original judgment. This court is unwilling to say on the record before it that the evidence was insufficient to support an award of $250.00 attorney fees in the original judgment. Such an award rests peculiarly in the discretion of the trial court and will not be "second guessed" on appeal absent a manifest abuse of discretion by the trial court. Keefe v. Keefe, 435 S.W.2d 313 (Mo.1968). The fundamental consideration in determining whether the wife is entitled to an award of attorney fees is whether she is possessed of sufficient means to prosecute the suit on her own. Patterson v. Patterson, 215 S. W.2d 761 (Mo.App.1948); Baer v. Baer, 51 S.W.2d 873 (Mo.App.1932), and Toth v. Toth, 483 S.W.2d 417 (Mo.App.1972). The record herein discloses that at the time of trial the wife had an average monthly gross income of $440.00. In view of the fact the wife was awarded custody of the eleven minor children, plus evidence supporting a finding that a reasonable monthly sum required to maintain and support the children amounted to $1,042.00, it is readily apparent that the wife's monthly income is going to have to be utilized not only for her own support (at the trial her attorney stated of record that she was not seeking alimony and none was awarded in the original judgment), but, in addition, a substantial part will have to be utilized to support the eleven minor children. For these reasons, the court is unwilling to say there was insufficient evidence to support the award of $250.00 attorney fees in the original judgment.

 The additional award of attorney fees and alimony in gross sought to be

achieved by the trial court in the amendment of its original judgment, is an entirely different matter. A brief reiteration of dates is necessary to put this aspect of the husband's fifth point in proper prospective. The original judgment was entered March 5, 1973. On March 19, 1973, the husband filed a motion for a new trial. Suffice it to say, the motion for a new trial filed by the husband did not complain about failure of the March 5th judgment to award alimony to the wife nor did it seek to have additional attorney fees awarded to her. On April 24, 1973, fifty days after entry of the original judgment on March 5, 1973, the trial court on its own motion, without a hearing or notice to the husband, attempted to amend the original judgment by awarding the wife alimony in gross in the sum of $10,000.00 and additional "attorney fees in the sum of Seven Hundred Fifty ($750.00) Dollars total, with credit in the sum of Two Hundred Fifty ($250.00) Dollars paid". The husband's claim, more accurately stated, is that the trial court exceeded its jurisdiction by amending the original judgment. Regardless of how well intentioned the trial judge was in attempting to belatedly amend the original judgment, he exceeded his jurisdiction by doing so on April 24, 1973. The rationale for this conclusion is clearly enunciated in Wiseman v. Lehmann, 464 S.W.2d 539, 543 (Mo.App.1971):

> "The power of a court to correct, amend, vacate, reopen or modify a judgment upon its own motion (and for good cause) is limited to thirty days after entry of the judgment. Supreme Court Rule 75.01, V.A.M.R., Potter v. McLin, 240 Mo.App. 708, 214 S.W.2d 751[4, 5]. *After that thirty-day period the court's jurisdiction is limited to granting relief sought by one of the parties in its after trial motions for reasons stated in that motion.* Stein v. McDonald, Mo., 394 S.W.2d 297[4, 5]; Loveless v. Locke Distributing Co., Mo., 313 S.W.2d 24[1]." (Emphases added.)

The wife herein filed no after trial motion and the husband's motion for new trial did not seek an award of alimony or additional attorney fees for the wife. The April 24, 1973, amendment of the March 5, 1973, judgment was void and must be set aside.

The April 24, 1973, amendment of the original judgment is declared void and set aside in its entirety. That portion of the original judgment entered March 5, 1973, relating to the award for support of the eleven minor children is set aside with directions that the trial court enter judgment for their support in the sum and amount of $650.00 per month; in all other respects the original judgment entered March 5, 1973, is affirmed. The cause is remanded to the trial court with directions to enter a new judgment consistent with this opinion.