**In re the MARRIAGE OF Nancy W. DUBOC, Respondent,**

**and**

**Robert Miller Duboc, Appellant.**

**No. KCD 28927.**

Missouri Court of Appeals, Kansas City District.

Oct. 31, 1977.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 5, 1977.

John C. Thurlo, Michael H. Maher, Kansas City (Swanson, Midgley, Gangwere, Thurlo & Clarke, Kansas City, of counsel), for appellant.

S. Preston Williams, David Lee Wells, North Kansas City, for respondent.

Before SWOFFORD, P. J., PRITCHARD, C. J., and DIXON, J.

SWOFFORD, Presiding Judge.

This appeal stems from a suit for dissolution of marriage in which the court below entered a judgment in favor of respondent (wife) and against the appellant (husband) for temporary maintenance in the sum of $3,500.00 per month and for suit money and temporary attorney's fees.

The husband complains only of that part of the order awarding temporary mainte-nance. He asserts two points on appeal, upon the strength of which he seeks a man-date either reversing the award or reversal and order for a new trial upon the issue of temporary maintenance. In support of this position he argues in substance that: *One,* the award for temporary maintenance was not supported by "any evidence" of reason-able need in accordance with Section 452.-315(5) RSMo 1973 Supp.; and *two,* that the wife failed to sustain her burden of proof of establishing her need for temporary main-tenance and her inability to provide such maintenance, and, thus, the award to her was an abuse of the trial court's discretion. These two points are so similar in purport that they can and should be considered to-gether in the light of the record evidence.

The parties were married in March, 1950, and there were children born of the mar-riage, two of whom were unemancipated females living at home at the time of the hearings on the issue of temporary mainte-nance, namely Carol Duboc, age 12 years, and Ann Duboc, aged 17 years. The family resided in a five-bedroom home located on approximately an acre of land at 601 West 55th Street in Kansas City, Missouri. The marriage had fallen on bad times for two or three years preceding the hearing. The wife had over this period filed suit for divorce (dissolution) on perhaps two occa-sions, which suits she had subsequently dis-missed. This period culminated in the fil-ing of the underlying suit for dissolution in this proceeding on March 22, 1976, on which date the wife moved from the home taking the younger girl, Carol, with her. The hus-band remained in the home. On April 2, 1976, the wife and Carol returned to the home on advice of her counsel and because she did not want Ann, who had then re-turned from her trip, to be left alone. From that date until the time of the hear-ings now under review, April 9 and April 20, 1976, the husband and wife both contin-ued to occupy the home, although under circumstances of complete estrangement.

The wife testified that the expense of the family living for the year 1975 was averag-ing $3,500.00 per month, not including tui-

tion for the girls at a private school or insurance, and that such sum was necessary for her and the children's temporary maintenance in the home. She stated that this figure would be higher if she and the girls lived elsewhere in rented quarters. Her statements in this regard, while not broken down into specific items of cost, were not challenged by cross-examination, nor in the testimony of the husband, and were at least tacitly conceded at the hearings. This unchallenged testimony was all of the evidence before the court below as to the maintenance needs of the wife and children.

As to the other factor of the ability of the parties to meet these expenses, now called into question for the first time, the evidence is unchallenged. The wife held certain shares of stock in her own name in three companies, Sears-Roebuck, Kimberly-Clark and Stewart-Warner, which at the time of the hearings the husband stated were worth $13,196.00. She also had a savings and loan account of $22,500.00. The source of these assets does not appear in the record. The wife, except for a few weeks immediately following the marriage in 1950, had never been gainfully employed and was unskilled in any trade, profession or business. At the time of the hearings she had owned an interest in a tennis shop for a short period of time, which business was operating at a loss.

The husband was an executive officer of and shareholder in the Western Casualty and Surety Company, and the wife testified, without objection, or cross-examination, that his 1975 income tax return declared an income of $200,000.00. Although the husband testified in the court below, he was not asked about the extent of his ownership in Western or his other assets or investments because his counsel made the following objection:

"MR. THURLO (Counsel for husband): If the Court please, I'm going to object to that line of questioning *because this gets into matters which might have to do with the division of marital property* upon a decree of dissolution being entered, if one is. It is not germane to any issue before the court on these temporary motions.

Now in order to foreclose, I think, inquiry into the respondent's financial circumstances—*I will stipulate with my client's permission, that he is financially able to pay $2500.00 a month or $3500.00 a month, whichever it is the petitioner now is asking for temporary support* and he further is financially able to pay the sum which is, I understand, is being requested as temporary suit money so that I see absolutely no relevance to going into his financial affairs or his property holdings at this time.

MR. SHAPIRO (Counsel for wife): I agree, Your Honor.

THE COURT: All right.

MR. SHAPIRO: I'll withdraw the question.

THE COURT: All right." (Emphasis added)

By like token, in the light of this colloquy and agreement, the wife's individually held assets of stock and savings were properly disregarded in determining the temporary maintenance for the wife and children in this case, since those also may ultimately be impressed with the necessity of division as marital property.

In this posture of the record the court had these limited areas in which to exercise its discretion: *One,* the needs of the wife and children to maintain their accustomed standard of living during the pendency of this litigation; *two,* her personal ability to meet these needs from her own individual wages, salary or product of her work; *three,* the husband's ability to meet such maintenance needs from *his* wages, salary or product of his work.

While the record lacks the specificity typically found in proceedings of this kind, the parties by failure to bring forward any specific facts and by tacit, if not unqualified, agreement on these issues, left the court below with little choice other than to enter the order appealed from. Trial courts historically are clothed with broad discretion in determining the amount to be awarded as maintenance, and this court reviews the record only to determine if a

manifest abuse of such discretion appears. *Fugate v. Fugate,* 510 S.W.2d 705, 707[5] (Mo.App.1974); *Forrest v. Forrest,* 503 S.W.2d 80, 83[5] (Mo.App.1973). This standard of review, while still valid and applicable, has been further defined (and refined) in all court-tried matters in *Murphy v. Carron,* 536 S.W.2d 30, 32 [1–3] (Mo.banc 1976), which standards are applicable in dissolution of marriage proceedings. *In re Marriage of Theodore Leonard and Bobby Leonard,* 538 S.W.2d 736, 737[1] (Mo.App. 1976). This record meets the standards of *Murphy v. Carron,* supra, and thus, the discretional judgment of the trial court should be disturbed in this case only if this court has "a firm belief that the decree or judgment is wrong". No such "firm belief" finds any support or nourishment in this record.

The judgment for temporary maintenance is affirmed and the cause is remanded for further proceedings.

All concur.