**In re the Marriage of Robert David NORMAN, Petitioner-Appellant,**

**v.**

**Sharon Lee NORMAN, Respondent-Appellant.**

**Nos. 11098, 11149 and 11160.**

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 4, 1980.

Motion for Rehearing or Transfer
Denied Aug. 25, 1980.

Application to Transfer Denied
Oct. 15, 1980.

Gary A. Love, Lilley, Cowan, Love & Doran, Springfield, John Bruffett, Ava, for petitioner-appellant.

David W. Bernhardt, Bussell, Hough, Bernhardt, Leighton & O'Neal, Springfield, Ralph W. Gilchrist, Bolivar, for respondent-appellant.

HOGAN, Judge.

In this dissolution of marriage case, the petitioner (husband) appeals from the order awarding temporary maintenance and child support to the respondent (wife); both parties appeal from the final order apportioning marital property, and the wife appeals from the final award of child support, contending the amount is grossly inadequate. The appeals were consolidated in this court for purposes of argument.

By way of general background, the record indicates the parties were married May 19, 1963, and were finally separated December 31, 1977. They are the parents of two children. The elder child is a female, 11 years of age; the younger child is a male, 8 years old. It would serve no useful purpose to recite all the evidence indicating the marriage is irretrievably broken. The husband testified that his wife had become an alcohol abuser; the wife testified her husband had become cold and indifferent to her and indicated she believed he was guilty of adultery. The parties' efforts to reconcile their differences were duly recited and we cordially agree with the trial court's finding that the marriage is irretrievably broken within the meaning of § 452.320, RSMo 1978.

By consent, the action was tried in Webster County although the parties resided at Ava, in Douglas County. Ordinarily, fixing of venue confers a mere personal privilege which may be waived by the party entitled to assert it. *State ex rel. Union*

*Electric Company v. Scott,* 470 S.W.2d 1, 3[1] (Mo.App. 1971). In our view, the husband, by commencing the action in Webster County, waived any issue of proper venue as did the wife by her failure to object by motion. See *In re Marriage of Bradford,* 557 S.W.2d 720, 729–730 (Mo.App. 1977). We hold the trial court acquired full jurisdiction of the parties and the subject matter.

Appeal No. 11098 deals with temporary allowances made by the trial court. The action was instituted January 19, 1978, and some order of hearing concerning temporary allowances was had on May 24 and 25. Nevertheless on May 30, 1978, the wife filed a written motion praying temporary custody of the children, temporary support for the children, temporary maintenance and an award of attorneys' fees pendente lite.

A hearing was had on the written motion on June 5. The wife presented a sanguine estimate of the amount she would need; the husband offered a very conservative estimate of the amount he could afford. On the same day, the trial court entered an order directing the husband to pay the sum of $300 per month as temporary maintenance, $300 per month as temporary child support and $750 to the wife's attorneys as fees pendente lite. The wife was awarded temporary custody of the children, subject to the husband's right to custody on weekends.

■ The wife contends that Appeal No. 11098 should be dismissed because no timely notice of appeal was filed. We think counsel is confused; our record, at least, indicates the order appealed from in No. 11098 was entered June 5, 1978. No after-trial motions were filed. On July 6, 1978, the husband filed notice of appeal with the circuit clerk, and on July 10, the clerk of this court acknowledged receipt of the notice of appeal and the proper docket fee. Under Mo.R.Civ.P. 81.05(a), the order appealed from became final 30 days after it was entered, or on July 5, 1978. As provided by Mo.R.Civ.P. 81.04, the husband then had 10 days to appeal. The notice of appeal was timely. The wife also argues that the order granting temporary allowances was not appealable. After the briefs were filed in these appeals, this court decided such orders are appealable, *In re Marriage of Deatherage,* 595 S.W.2d 36, 37–38[1–4] (Mo. App.1980), and we see no reason to reconsider that ruling.

■ The husband has appealed only from that part of the order allowing temporary maintenance and temporary child support. In the past, our courts have observed that such awards are reviewed only to determine whether there has been an abuse of sound judicial discretion. See, e. g., *Bryan v. Bryan,* 452 S.W.2d 293, 295[2] (Mo.App. 1970); *McCann v. McCann,* 448 S.W.2d 323, 325[1] (Mo.App. 1969). The scope of review remains the same under the Dissolution of Marriage Act of 1973. *In re Marriage of Deatherage, supra,* 595 S.W.2d at 40[9]; *In re Marriage of Duboc,* 559 S.W.2d 250, 252–253 (Mo.App. 1977). In this case, the wife estimated her living expenses and arrived at the conclusion that she would require about $900 per month. The husband testified that his "take-home" pay was only $1,064 per month. Nevertheless, the husband also testified that "over the last three years" he had had a taxable income of $20,000 to $22,000 per year, and he himself estimated that his wife "ought to be able to get by on $600.00 [per month]." The trial court awarded $300 per month as temporary maintenance and $300 per month as temporary child support. We find no abuse of discretion.

Appeals No. 11149 and 11160, as noted, are focused upon the valuation and apportionment of marital property. The husband's position is, in essence, that the trial court erroneously valued nonmarital property and abused its discretion in awarding the wife a money judgment in lieu of marital property based on that erroneous valuation. The wife asserts that the trial court erroneously classified some property as nonmarital property and that the amount awarded as child support is insufficient. These assignments of error require some recital of the facts, bearing in mind that resolution of disputed factual issues was for the trial court.

■ The asset which is the principal subject of controversy is the husband's interest in the Ava Drug Company, a closely held family corporation. In deciding whether or not the husband's interest in the Ava Drug Company is marital or nonmarital property, some general principles must be borne in mind. Section 452.330(2)(1), RSMo 1978, specifically provides that property acquired (by either spouse) by gift, bequest, devise or descent is nonmarital property, and it is generally agreed that the status of property as marital or nonmarital is fixed as of the time the property is acquired. *Cain v. Cain*, 536 S.W.2d 866, 871, and authorities cited n.5 (Mo.App. 1976). These considerations are to some extent offset in this case by the principle that under the provisions of *original* § 307 of the Uniform Marriage and Divorce Act, from which § 452.330(2) was taken, any accumulation of income from the husband's nonmarital property constitutes marital property to be divided by the court under § 452.330(1). *Brunson v. Brunson*, 569 S.W.2d 173, 178 (Ky.App. 1978).

■ The Ava Drug Company is a family business which has been operated by the husband's family for many years. The corporate records before us indicate the business was incorporated in 1966 by the husband and his parents, but the husband was only a nominal shareholder, included in the Articles of Incorporation to satisfy the three-incorporator requirement of § 351.-050, RSMo 1969. The husband's parents were patently the beneficial owners of the corporation, and continued to be until 1975.

In the late summer of 1975, the senior Normans decided to divest themselves of control of the Ava Drug Company. As Mr. Norman put it, he and his wife " . . . went to the attorney's office to transfer this down to our sons and to make a will at the same time." The attorney who was consulted had the tax consequences of the transfer in mind. So, after consultation with their sons, the senior Normans executed a stock redemption agreement with the Ava Drug Company in exchange for a private annuity, at the same time donating 50 shares of stock not redeemed by the corporation to each of their two sons, the husband and his brother, Stephen Allen Norman. All other outstanding shares were redeemed, and federal gift tax was paid on the excess of the value of the stock transferred over the calculated present value of the annuity. We are not tax experts, but current literature indicates that execution and performance of the "Annuity" (stock redemption) agreement was a perfectly lawful method of passing control and ownership of the Ava Drug Company from the senior Normans to their sons.[1] So, while the husband owns a one-half interest in the Ava Drug Company because he owns one-half the outstanding corporate shares, his interest in the corporation falls squarely within the exception created by § 452.-330(2)(1); it is nonmarital property as the trial court found.

Nevertheless, the husband's accountant testified that as of January 1, 1977, the Ava Drug Company had unappropriated retained earnings in the amount of $90,208 and a time certificate in the amount of $20,000. The period over which these sums accumulated is not shown, nor does it appear that these sums were available in cash, but given a construction of § 452.330(2) which requires inclusion of accumulated income from nonmarital property in the marital community, and given the presumption created by § 452.330(3), it is arguable that one-half the accumulated income should have been denominated marital property. We do not say this court would have accepted the argument; what we are attempting to illustrate is the degree of incredibility inherent in nice calculations of the value of marital and nonmarital property in dissolution cases.

The trial court found that the net marital estate consisted of the following items: 1) a residence in Ava, valued at $53,000; 2) a one-half interest in the Ferguson Drug

1. For a sketch of the principles involved, see Collins, Outline on Estate Planning Alternatives to Recapitalizations and Holding Companies for Closely Held Family Corporations, 15 Real Property, Probate and Trust J. 88, 90–92, 94–96 (1980).

Company at Willow Springs, to which a value of $25,000 was assigned; 3) three automobiles, valued at $6,000; 4) another automobile, household furnishings, two lawn mowers and the husband's collection of antique pharmaceutical containers; no value was assigned to these items; 5) an I.R.A. account in the amount of $2,400, and 6) an insurance policy with a cash value of $9,030. The trial court awarded the wife as her sole and separate property one of the unvalued automobiles, the household furnishings and in lieu of all other specific items and cash allowances, the sum of $73,-500, to be paid by husband.

With these principles and observations in mind, we address the arguments advanced by the husband in Appeal No. 11160. They are, seriatim: 1) That the trial court erred in its valuation of the nonmarital property; and 2) abused its discretion in awarding the wife a money judgment in the amount of $73,500.

The trial court found, quite properly, that the husband's interest in the Ava Drug Company was nonmarital property. The husband's argument is that his accountant's testimony that his interest in the Ava Drug Company was worth the sum of $30,799.50 should have been accepted, and the trial court should have rejected the testimony of witness Spainhower, called by the wife, that the fair market value of the Ava Drug Company was $200,000. On this premise, among others, counsel argues that the trial court struck an inordinate balance of assets between the parties. The trial court found as a fact that the husband's interest in the Ava Drug Company had a net value of $65,000. The court took in consideration the fact that the corporation's assets included a dwelling house near the store, two cabins at Rockaway Beach and the $20,000 time certificate.

 The difficulty with counsel's argument is that it completely omits the husband's testimony touching the fair market value of the Ava Drug Company. The husband was an experienced pharmacist, and,

of course, as an owner he was competent to testify to the reasonable value of his property, real or personal, in the absence of a showing that he in fact lacked knowledge of the value at issue or that his opinion was based on an improper standard. *Casada v. Hamby Excavating Co., Inc.,* 575 S.W.2d 851, 854–855 (Mo.App. 1978). There is no indication here that the husband based his testimony on an improper standard, as the landowner did in *Shelby County R–IV School District v. Herman,* 392 S.W.2d 609, 613–614 (Mo. 1965), nor is there any indication he lacked knowledge of the values at issue, as was demonstrated in *Bridgeforth v. Proffitt,* 490 S.W.2d 416 (Mo.App. 1973). The husband's testimony was that the market value of the Ava Drug Company was $175,000 or $180,000, subject to (then) current liabilities of $33,708. The value of the husband's interest in the corporation, by our calculation from his testimony, is a little over $73,000. The husband argues that the value of the annuity must be deducted, but such argument flies in the face of the recital in Article IV of the redemption agreement which states that "[T]he promise to make [the annuity] payments is and shall be unsecured." In our view, if the redemption agreement is properly construed in light of its purpose, the senior Normans have only an unsecured promise to pay the annuity.[2] The trial court found the value of the husband's interest in the nonmarital property to be $65,000. That is within the range of values testified to; considering the diffuse and imprecise nature of the evidence, we cannot generate any "firm belief" that the finding is erroneous.

The value of the marital estate or community—which may have been a little underestimated—is $95,430, as calculated by the court. The husband argues that the award to the wife is so grossly excessive as to constitute an abuse of discretion. We do not agree. There was testimony in the record, which the trial court could have believed, that the wife worked while the husband obtained his professional education. She was not the sole source of sup-

**2.** See Collins, *supra,* n. 1 at 90.

port, but she made a substantial contribution. There is evidence in the record which supports the conclusion that the wife, during most of the 15-year marriage, performed all the duties reasonably to be expected of a female spouse. To a considerable degree, we have discounted the testimony concerning the mutual misconduct of the parties. If the wife became an alcohol abuser, the husband was insensitive to her problem; if the husband was inattentive, the wife gave him little reason to be otherwise.

The wife testified that she had no particular occupational skill. She was willing to accept whatever employment she could find but it will be necessary for her to acquire occupational skill or work as a secretary. The wife's only recent employment experience was 5½ months' employment by an attorney in Ava, and she testified she was not a qualified legal secretary. Moreover, as the trial court observed, the children will need care and attention, and the wife, to whom principal custody of the children was awarded, must now attend to their rearing alone.

■ It has been said many times that § 452.330 does not require an equal division of marital property; it looks only to a subjectively fair and equitable distribution of those assets. *Marriage of Schulte*, 546 S.W.2d 41, 46[3] (Mo.App. 1977); *In re Marriage of Powers*, 527 S.W.2d 949, 957[15] (Mo.App. 1975). The award to the wife is disproportionate, but considering the whole record, it does not amount to an abuse of discretion.

■ The husband further complains that the judgment entered is "conditional" and unenforceable, and has moved to dismiss the appeal because no final judgment was entered. The point is strained and tenuous. The court has ordered the husband to pay the wife the sum of $73,500; upon such payment the wife is to convey all her interests in all property not set off to her, to the husband. Each party is ordered to execute such documents as are necessary to effectuate the decree. There is no question that the trial court had authority to order payment of a sum of money in lieu of making an award of specific items, *Claunch v. Claunch*, 525 S.W.2d 788, 791 (Mo.App. 1975), and the power to divide property includes the power to render the judgment effective. *In re Marriage of Kueber*, 599 S.W.2d 259, 261[1] (Mo.App. 1980). The decree entered is a present judgment for a sum of money; it may be enforced against either party by execution or through a special master appointed by the court. The point is without merit.

■ Appeal No. 11149 is the wife's cross-appeal. One of her points is that the trial court erred in finding the husband's stock in the Ava Drug Company was nonmarital property. As we have seen, the husband's shares in the corporation fall squarely within the exception created by § 452.330(2)(1). Further, the wife complains that the amount awarded as child support—$300—is so grossly inadequate as to constitute an abuse of discretion. We do not find it such.

For the reasons noted, the decrees appealed from are in all respects affirmed.

All concur.