In re **Robert David NORMAN, d/b/a Ferguson Drug Company, Debtor.**

**Sharon L. NORMAN, Plaintiff,**

v.

**Robert David NORMAN, Defendant.**

Bankruptcy No. 80–03805–S–13.
Adv. No. 81–0097–S–13.

United States Bankruptcy Court,
W. D. Missouri, S. D.

Sept. 3, 1981.

Donald E. Bonacker, Springfield, Mo., for plaintiff.

Gary A. Love, Springfield, Mo., for debtor.

## MEMORANDUM OPINION AND ORDER

JOEL PELOFSKY, Bankruptcy Judge.

Debtor filed this proceeding under Chapter 13 on November 18, 1980. He scheduled

a judgment owing his former wife, arising out of an action for dissolution of marriage, as a disputed debt. Initially he proposed to pay that debt as unsecured at 10% of the allowed amount. On January 19, 1981, the former wife filed an objection to confirmation of the plan, contending that it was not proposed in good faith and would pay unsecured creditors less than they would receive from liquidation.

On February 5, 1981, debtor proposed an amendment to the plan increasing substantially the amount of payment to unsecured creditors. The motion to amend was denied as it would extend the plan beyond the statutory term of five years.

Debtor denied the allegations contained in the objection to confirmation. He then filed an objection to the former wife's claim, saying that the claim was not secured and not of the value alleged.

On March 16, 1981, debtor filed an additional amendment to the plan, raising the payments so that the plan could be completed within the statutory term. Mrs. Norman then filed another motion to dismiss, contending that debtor was not eligible to file under Chapter 13, having too much debt and that the proceeding is hindering creditors and not filed in good faith.

At the same time that these proceeds were going on, actions in the domestic relations suit were taking place. The decree was affirmed on appeal on August 4, 1980. *Norman v. Norman*, 604 S.W.2d 680 (Mo. App.1980). At the time of appeal, debtor had posted a supersedeas bond with his parents as sureties. Posted as security were 50 shares of the stock of Ava Drug Company, which debtor claims as exempt and as of no value. After the appeal was decided, Mrs. Norman attempted to execute upon the appeal bond, alleging that the judgment was largely unpaid. A hearing on the proposed execution was set for April 23, 1981, in the Circuit Court of Webster County, Missouri.

By letter, debtor's counsel had notified the State Court of the pendency of the bankruptcy. That Court declined to stay its proceedings and, on April 23, 1981, entered judgment on the supersedeas bond in favor of Mrs. Norman and against the sureties. On the same day, debtor filed a complaint in this Court against Mrs. Norman and her attorney, alleging that the proceedings against the sureties violated the automatic stay imposed by Section 362 of the Code.

In addition to her objection to confirmation, Mrs. Norman filed, on January 19, 1981, a complaint to lift the stay to allow her to execute on her dissolution judgment against the 50 shares of stock, clearly part of the property of the estate. A hearing on this complaint was held on April 1, 1981, at which time the parties were present in person and by counsel. Evidence was heard and the matter taken under advisement. On April 21, 1981, Mrs. Norman moved the Court to allow her to present in this proceeding the testimony of the State trial judge as to his analysis of the decree. On July 13, 1981, the Court overruled that motion. 12 B.R. 512 (Bkrtcy.)

There was a hearing on the complaint alleging violation of the stay order on May 26, 1981. The parties appeared in person and by counsel. Evidence was heard and the matter taken under advisement. Briefs as to each of the issues raised in these various proceedings have been filed.

### I.

At the time of the appeal, debtor and his parents executed a supersedeas bond to Mrs. Norman in the sum of $80,000.00 conditioned as follows:

> "if the said appellant shall satisfy the said judgment in full together with the costs, interest and damages for delay, if for any reason the appeal is dismissed or if the judgment is affirmed, and shall satisfy in full such modification of the judgment and such cost, interest and damages as the appellate court may adjudge and award, or if said judgment be set aside, then this obligation shall be

void; otherwise to remain in full force and effect."

The judgment was affirmed. Mrs. Norman then attempted to execute upon the bond. In defense against this attempt, debtor argues that execution is stayed generally under Section 362, more specifically under Section 1301 which stays an action against a co-debtor where there is a Chapter 13 proceeding and further that a judgment creditor cannot execute against a surety where the underlying debt is subject to modification in the bankruptcy proceeding.

Section 362 of the Code, Title 11, U.S.C. provides, in part, that:

> "a petition filed under section 301 [a voluntary case] . . . of this title operates as a stay, applicable to all entities, of—
>
> "(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of a case under this title;—
>
> "(3) any act to obtain possession of property of the Estate or of property from the estate;
>
> "(4) any act to create, perfect, or enforce any lien against property of the estate . . ."

The plain language of these portions of Section 362 prohibits actions against the debtor or the property of the estate. The stay does not reach property belonging to others, although it reaches the debtor's property held by others. "Execution and levy against the debtor's prepetition property are stayed and attempts to collect a judgment from the debtor personally are stayed." House Report No. 95–595, 95th Cong., 1st Sess. (1977) 341, reprinted in 2 App. Collier on Bankruptcy (15th Ed.), U.S. Code Cong. & Admin. News 1978, p. 5787, 6297.

■ There is an exception contained in Section 362(b) permitting actions for "the collection of alimony, maintenance or support from property that is not property of the estate." In a Chapter 13 proceeding, post petition earnings are property of the estate, Section 1306, and initially includes even property that the debtor may declare as exempt under Section 522 until such time as the Court approves, in some fashion, the claim of exemption. Since the Court has not yet determined whether the judgment at issue here is alimony, support or maintenance, Mrs. Norman is stayed at the outset from executing against the debtor or property of the estate under the general language of Section 362.

■ She is not stayed, however, from executing against the sureties on the supersedeas bond. Section 1301 provides the protection of the stay to a codebtor only as to a consumer debt. A consumer debt is defined in the Code as a "debt incurred by an individual primarily for a personal, family, or household purpose." Section 101(7), Title 11, U.S.C. The meaning is borrowed from the definition of "consumer goods" set out in the Uniform Commercial Code, 5 Collier on Bankruptcy ¶ 1300.16 (15th Ed.). See, for example, Section 400.9–109(1), R.S.Mo. 1969.

The words "personal, family or household" are used in many places in the Code. See, for example, Section 522. They are intended to describe debts or property relating to the ability of the debtor to have a fresh start. They are used as a phrase of art, growing out of long history wherein the Courts were concerned with leaving a debtor with sufficient goods to continue family life. 3 Collier on Bankruptcy ¶ 522.-02 (15th Ed.).

■ The supersedeas bond is intended to protect a judgment debtor from levy during the course of an appeal. It has the additional purpose of guaranteeing paying of the judgment if it is affirmed.

> "An appeal shall stay the execution . . . when the appellant . . . presents to the court . . . a supersedeas bond which shall have such surety or sureties as the court requires . . . conditioned for the satisfac-

tion of the judgment in full ..." Rule 81.09, Missouri Rules of Civil Procedure. ... the insolvency of the principal is the very contingency against which the appeal bond was intended to provide." *Fisse v. Einstein*, 5 Mo.App. (1878) 78, 92.

A supersedeas bond is not a consumer debt as that phrase is used in the Code. While debtor and the property of the estate are protected by the provisions of Section 362, the sureties are not protected by the provisions of Section 1301. While such a stay would permit the debtor to develop his plan in a less harried atmosphere, the language of the statute does not support the extension of the stay to protect the sureties.

While the process by which these issues have been brought before this Court has left something to be desired, the conduct of Mrs. Norman and her attorneys do not constitute contempt within the meaning of Rule 920, Rules of Bankruptcy Procedure. The order to show cause is satisfied and denied. Since the Court has concluded that there is no automatic stay against the efforts of Mrs. Norman to enforce her judgment against the sureties on the supersedeas bond, her complaint to lift the stay is DISMISSED as moot.

## II.

The parties also seek a determination as to whether obligations which were created as a result of the dissolution proceeding are dischargeable in bankruptcy. The trial court awarded Mrs. Norman an automobile, household goods and furnishings "and in lieu of her interest in the other property ... the sum of $73,500.00." Debtor contends that this is clearly a distribution of property while Mrs. Norman maintains that it is support.

In his findings of fact, the trial court found that the marital property had a value of $95,430.00. He went on to find—

"... that petitioner is a long time resident of the Ava community and intends to continue living there, that the Fergu-

son Drug Company is of much more value to him then (sic) to respondent as he is qualified to operate that business and respondent is not, that the home in Ava is of more value to petitioner since he intends to reside in Ava, while respondent intends to live elsewhere; that respondent would not be able to maintain said home and pay the mortgage payments even if said property was set off to her.

"The Court further finds that a fair and equitable division of the property cannot be made in kind because of the unique nature of the property, the high cost of upkeep and debt payments, the limited earning ability of respondent, and the location of the parties (sic) future residence. The Court further finds that an equal division of the marital property would not be fair to respondent, in view of the earning capacity of each party, the time the respondent must devote to the care of the children; the amount of nonmarital property owned by petitioner and the style of living in which the parties are accustomed to living."

The Court's award was upheld on appeal. *Norman v. Norman*, supra. Debtor scheduled the debt as disputed and clearly intends to modify the amount, taking the position that the whole debt is dischargeable. Section 1328(a) provides that successful completion of the plan discharges a debtor "of all debts provided for by the plan ... except any debt—... (2) of the kind specified in section 523(a)(5) of this title." That particular section declares that a "debt ... to a spouse ... for alimony to, maintenance for, or support ... in connection with a ... divorce decree." The decree contains an award of child support but no award specifically denominated "alimony, maintenance or support" for Mrs. Norman.

"Paragraph (5) ... will apply to make nondischargeable only alimony, maintenance, or support owed directly to a spouse or dependent ... What constitutes alimony, maintenance or support,

will be determined under the bankruptcy laws, not State law." House Report No. 95–595, 95th Cong., 1st Sess. (1977) 364, reprinted in 2 App. Collier on Bankruptcy (15th Ed.), U.S.Code Cong. & Admin. News 1978, p. 6320.

■ The Bankruptcy Court is not bound by State law or characterizations contained in the divorce decree. "However, recourse must be had to state law for principal criteria by which to determine whether the obligations imposed by the decree are one or the other." *In re Lineberry*, 9 BR 700, 704 (Bkrtcy.W.D.Mo.1981). See also *In re Pelikant*, 5 BR 404 (BC N.D.Ill.1980) and *In re Fox*, 5 BR 317, 6 BCD 709 (Bkrtcy.N.D.Tex.1980). Where it is not clear from the face of the judgment what the nature of the award is, this Court is obligated to hear extrinsic evidence which, taken with the principles of state law, enable the Court to determine the intent of the award. An evidentiary hearing was held in this matter, at which time the parties appeared in person and by counsel.

The evidence shows that there is a disparity in income between the parties and that Mrs. Norman earns substantially less than debtor. The evidence also shows that she has expenses in the nature of housing and for care of the minor children which are not covered completely by the award of child support. However, this Court is not to act as a court of domestic relations, attempting to make awards in response to such evidence but only having once verified that a need exists to discern what amount of an otherwise ambiguous state court award is intended to meet that need.

■ In his findings of fact, the trial court recognized the disparity of income and Mrs. Norman's needs. The language of those findings, although not the award, essentially tracks the statutory pattern of Section 452.335, R.S.Mo.1969, which sets the standards for an award of maintenance. That section provides, in part, that:

"1. In a proceeding for dissolution of marriage the court may grant a maintenance order to either spouse, but only if it finds that the spouse seeking maintenance

(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances makes it appropriate that the custodian not be required to seek employment outside the home.

2. The maintenance order shall be in such amounts and for such periods of time as the court deems just, and after considering all relevant factors including:

(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The standard of living established during the marriage;

(4) The duration of the marriage;

(5) The age, and the physical and emotional condition of the spouse seeking maintenance;

(6) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance; and

(7) The conduct of a party seeking maintenance during the marriage."

The Court finds that the trial court clearly intended that some portion of the $73,-500.00 be considered maintenance. The division of property was disproportionate because the earning capacities of the parties were disproportionate. The excess awarded to Mrs. Norman was intended to compensate for that disparity. An equal division

of the property would have given her property of a value of $47,715.00. It is that portion of the award in excess of an equal division of the marital property, $25,785.00, which reflects Mrs. Norman's need for maintenance and the trial court's valuation of that need.

The Court holds that $47,715.00 of the $73,500.00 represents distribution of property and is dischargeable. The balance is maintenance and not dischargeable. The award of attorney fees is also dischargeable. See *In re Moyer*, 13 BR 436 (DC W.D.Mo.1981). Debtor should amend his plan accordingly and is granted to and including September 18, 1981 to make such amendments.

This Order constitutes Findings of Fact and Conclusions of Law as required by Rule 752, Rules of Bankruptcy Procedure.