**In re Robert David NORMAN, Debtor.**

**Sharon Lee NORMAN, Plaintiff,**

v.

**Robert David NORMAN, Defendant.**

**Bankruptcy No. 80–03805–S–13.**
**Adv. 81–0097–S–13.**

United States Bankruptcy Court,
W.D. Missouri, S.D.

Aug. 22, 1983.

Donald E. Bonacker, Springfield, Mo., for Sharon Norman.

Gary A. Love, Springfield, Mo., for debtor.

Rita A. Rhodes, trustee.

## MEMORANDUM OPINION AND ORDER

JOEL PELOFSKY, Bankruptcy Judge.

Robert David Norman filed a Chapter 13 petition on November 18, 1980. His principal creditor was his former wife who held a judgment arising out of a dissolution of marriage. The judgment was obtained in 1978 and affirmed on appeal. *Norman v. Norman*, 604 S.W.2d 680 (Mo.App.1980). Debtor scheduled her as holding an unse-

cured claim and proposed payment at 10% of the allowed claim.

On January 19, 1981 Mrs. Norman filed objections to confirmation of the plan contending that the plan was not filed in good faith, that she held a secured claim and that the creditors would receive more in liquidation than under the plan. Debtor responded denying these contentions. Mrs. Norman filed a proof of claim to which debtor objected. Debtor then moved to amend his plan increasing the amount to be paid to unsecured creditors.

On April 20, 1981, Mrs. Norman filed a Motion to Dismiss alleging that debtor was not eligible to be a Chapter 13 debtor as his unsecured debts exceeded the amount allowed by statute, Section 109(e) of the Code, and for various other reasons. In the interim Mrs. Norman was taking action in the state court to collect her judgment against the supersedeas bond, posted in part by debtor's parents. Debtor filed a Motion seeking to hold her and her attorney in contempt for the collection efforts. Mrs. Norman filed a Complaint to Lift the Stay to allow her to collect against the bond. Hearings were held on the pending pleadings and actions.

During the course of those proceedings Mrs. Norman proposed to call the state trial court judge as a witness to explain the judgment. Debtor objected. The objection was sustained. *In re Norman,* 12 B.R. 512 (Bkrtcy. WD Mo.1981). After hearing the evidence this Court held that attempts to collect on the supersedeas bond against the sureties, debtor's parents, were not barred by the automatic stay. *In re Norman,* 13 B.R. 894, 897–98 (Bkrtcy. WD Mo.1981). This Court also concluded that part of the award in the state trial court was a property settlement and dischargeable. *In re Norman,* 13 B.R. at 899–900.

Thereafter lengthy evidentiary hearings were held on the issues raised by Mrs. Norman's motions and on confirmation. The parties filed extensive briefs. The preliminary issue is whether debtor is eligible to be in Chapter 13. The answer to that rests upon a determination of the amount of unsecured debt which debtor owes.

I

■ A person may be a debtor under Chapter 13 of the Code if, on the date of the filing of the petition, the individual has regular income and owes "noncontingent, liquidated, unsecured debts of less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000 . . ." Section 109(e) of the Code, Title 11, U.S.C. The requirements are strictly construed. If the debtor does not meet them he is not eligible and the case must be converted or dismissed. *Matter of Prince,* 5 B.R. 432 (Bkrtcy. WD N.Y.1980); *In re Flaherty,* 10 B.R. 118 (Bkrtcy. ND Ill.1981); *In re Cronkleton,* 18 B.R. 792 (Bkrtcy. SD Ohio 1982).

■ The Court is required only to consider noncontingent debts. Mrs. Norman argues that debtor must include debts for which he is personally liable and also debts as to which he may have liability growing out of his partnership in Ferguson Drugs. Compare *In re Kelsey,* 6 B.R. 114 (Bkrtcy. SD Tex.1980). The partnership is not in bankruptcy and is solvent. Partners in Missouri are jointly and severally liable for partnership debts. Section 358.150, R.S.Mo. 1969. But it also appears that a partnership creditor must satisfy his claim from partnership assets before gaining access to the assets of the individual partners. *Plattner v. People's Bank of Salisbury,* 71 S.W.2d 75 (Mo.App.1934); *Wilbur Waggoner v. Bumiller,* 542 S.W.2d 32 (Mo.App.1976). *Kelsey,* supra, based upon Texas law is distinguishable. Debtor's liability for the debts of the partnership being contingent, they need not be considered in determining debtor's eligibility to be a Chapter 13 debtor.

■ Mrs. Norman's claim is based upon the judgment in her favor arising out of the dissolution of marriage action. Judgments of the courts of appeal or circuit courts of the state are liens upon "real estate of the person against whom they are rendered . . ." Sections 511.350 and 511.440, R.S.Mo. 1959. In addition a perfected execution, placing collateral in the hands or control of

the creditor, results in the debt being secured or satisfied to the value of the collateral seized. *Vittert Construction and Investment Company v. Wallcovering Contractors, Inc.*, 473 S.W.2d 799 (Mo.App. 1971); *State ex rel Mather v. Carnes*, 551 S.W.2d 272 (Mo.App.1977). See also Section 400.9–305, R.S.Mo.1969.

■ Debtor owns real estate in his own name. The judgment, therefore, is a lien against such property provided it is not avoidable under Section 522(f)(1) of the Code. The value of the property is to be determined as of the date of filing for that is when eligibility to be a Chapter 13 debtor must be determined. The value "is to be set at that amount which would [be] obtained from the most commercially reasonable disposition practicable under the circumstances . . . [S]uch value would be the fair market value". *In re Schiavoni*, 19 B.R. 51, 52 (Bkrtcy. ED Penn.1982).

■ The real property in Ava, Missouri, consists of a house and five acres of land. It was valued at $45,000 in the schedules with a secured debt of $24,495.13. Debtor claimed his full Section 522(d)(1) exemption against the property. Taking debtor's value that leaves $13,000 to creditors. Mrs. Norman holds the lien. It is not avoidable since it impairs no exemption and she is secured to at least that amount.

■ The debt to Mrs. Norman was scheduled, in round figures, at $81,500 and allowed by the trustee, in round figures, at $91,000. The balance of the unsecured debt was approximately $19,000. If Mrs. Norman's claim is secured at a minimum of $13,000, then the amount of unsecured debt is less than $100,000 and debtor is eligible to be in Chapter 13. The Motion to Dismiss for lack of eligibility is OVERRULED.

## II

Debtor proposes to pay allowed secured claims outside the plan and to pay the trustee the sum of $37,504.87 for distribution to unsecured creditors. He determines this amount by valuing his assets on a liquidation basis in accordance with the test established in Section 1325(a)(4) of the Code which provides that a plan may be confirmed, if, *inter alia,*

> "the value, as of the effective date of the plan, of property to be distributed under the plan on account of cash allowed unsecured claims is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date".

As part of this determination debtor concluded that the real estate was worth $45,000, the Ava Drug Company stock and the IRA had no value and the half interest in the Ferguson Drug Company was worth $4,500. Mrs. Norman disputes those values.

### A

■ Debtor's real estate consists of a house and five acres of ground in Ava. He valued it in his schedules at $45,000. In the dissolution hearing, in May of 1978, debtor testified that the property had a value of $80,000. At hearings before this Court evidence of value ranged from $73,600 to the scheduled amount, with an intermediate appraisal of $54,000. The evidence shows that the real estate market in this part of Missouri is depressed. It was better in 1978. At the time of the hearings, in late 1982 it was not active.

The statute, however, requires the Court to determine values as of the effective date of the plan, which would be date of confirmation. The lapse of time between the hearings and this opinion are a result of the time necessary to prepare and file transcripts and briefs. There has been no noticeable change in the economic conditions of the area or in the real estate market. The value of this real estate has to be determined then in light of a mildly depressed market in a locale in which the market for higher priced properties is limited. It is unlikely that a liquidation sale would produce as much as a commercial sale where time was not a factor. Value must also be discounted because of the lay of the land. The Court finds, therefore, that the real estate has a value of $52,000 for liquidation purposes.

## B

■ Debtor is the owner of several insurance policies and an individual retirement account (IRA). The evidence shows that debtor cashed in four policies and purchased a single large policy. The cash surrender value of the four policies was offset by a loan of similar amount. The policies had no value. The surrender of the four policies and the purchase of another did not diminish the assets of the estate.

■ The IRA has a present value of $9,200. It presumably increases at the rate of $100 per month from contributions but there is no evidence that contributions have been made since the hearing. The Court concludes that the IRA has a value of $9,200 less a withdrawal penalty and tax consequences probably 30% in amount. The IRA account, therefore, has a liquidation value of $6,000.

■ The evidence also shows that a debtor owns a life insurance policy on his brother's life arising out of the Ferguson Drug Company partnership. Premiums are paid from proceeds of the partnership but the policies are owned by the individuals. The cash surrender value of this policy is about $3,150. The policy itself may be claimed as exempt property, Section 522(d)(7) of the Code, but the loan value is property of the estate subject to being liquidated. Section 522(d)(8) only exempts a dollar amount where the debtor is the owner and is the named insured or a dependent is the named insured. House Report No. 95–595, 95th Cong. 1st Session (1977) 361–62 reprinted in App. 2 Collier on Bankruptcy (15th Ed.), U.S.Code Cong. & Admin.News 1978, p. 5787. Debtor's brother falls in neither category.

## C

■ Debtor values his half of the stock of Ava Drug Company, a Missouri corporation, at zero. His principal argument in support of this valuation is that no one would buy the stock in the absence of a non-competition agreement. It is also true that the purchaser would hold only 50% of the corporate stock and might be in a hostile environment since debtor's brother owns the other 50%. Obviously if the corporation were to function, cooperation would be necessary and not likely to be achieved. On the other hand the corporation has substantial assets and does produce a return on investment. In addition debtor's brother does not work at the Ava store. An independent operation exists and could continue. It is admittedly, however, not the kind of situation which would produce the best price.

Despite these problems the Court concludes that the stock has value. The balance sheet for May 1982 shows current liabilities of $111,384 and current assets of $214,409. The income statement for the five months of 1982 shows a small operating loss before miscellaneous income but includes almost $50,000 in salaries on gross sales of $256,273. There is also a deduction for depreciation of $4,645 with no evidence that it is funded.

Mrs. Norman makes an evaluation based upon liquidation values and concludes that the value of debtor's shares is $15,300. The difficulty with a liquidation analysis is the one mentioned above, i.e., that the buyer would get only a half interest in a business whose other owner may not be friendly. A capitalization analysis has the same problem but is a valid tool.

> "Capitalization of gross income has long been recognized as a relevant factor to be considered by the assessing authorities, particularly in assessing business properties ... The purpose is ... to ascertain the full cash value ... Ordinarily the cash value would be the current market value, or what a willing purchaser would pay to a willing seller in the open market". *Bornstein v. State Tax Commission of Md.*, 227 Md. 331, 176 A.2d 859, 96 A.L.R.2d 661, 665 (Md.App.1962).

To a willing buyer at the time of filing, Ava Drug had a capitalized value in excess of $100,000. At the time of this hearing there was only a nominal income but substantial assets. The capitalized value of the company was probably in the range of $20,-

**568**

000 to $30,000. These values have to be discounted significantly because the sale would only be of a half interest. It is not likely that this Court could force sale of the entire entity, subject to paying off the interests of the co-owner. See Section 363(h) of the Code, Title 11, U.S.C. and 2 Collier on Bankruptcy ¶ 363.09 (15th Ed.). The suggestion in the commentary is that the ownership interests described herein, namely stock and partnership interests, are not susceptible to treatment under this provision of the statute.

The Court finds, therefore, that the stock of Ava Drug has a value of $20,000. Using the same analysis and the same considerations the Court finds that debtor's partnership interest in Ferguson Drug is $25,000 at the time of hearing. The 1981 tax return shows net income of $18,208.47, half attributable to debtor even though he apparently received nothing. The Court's value reflects a modest capitalization in light of the problems of finding a willing buyer.

### D

■ There are miscellaneous assets as to which there is little evidence as to value. The Court finds that the various automobiles have a total value of $1,200. The Court notes that the 1947 Plymouth was exchanged for paving. The Court considers that trade to have enhanced the value of the real estate. There is no evidence that the household goods and wearing apparel exceed the amount allowed under the Code as exemptions. The mowers also constitute exempt property except that the value of the riding mower exceeds the maximum per item allowance, Section 522(d)(3), and $50 of that value must be added to the liquidation values. Debtor may also exempt $500 in personal jewelry, leaving $400 to be added to liquidation values. Section 522(d)(4) of the Code.

There is a dispute as to the value of debtor's bottle collection, old jars, some apothecary and some not, of mixed values. There was no testimony as to the extent of the collection or its value. There was evidence that debtor had purchased about $1600 worth some time shortly before the bankruptcy. Debtor claims the entire collection as exempt under Section 522(d)(3).

■ What items are exempt under the rubric of "household furnishings [and] goods" is a subject of some dispute. Clearly the exemption is related to property necessary for a fresh start. In re Coleman, 5 B.R. 76 (Bkrtcy. MD Tenn.1980); In re Martinez, 22 B.R. 7 (Bkrtcy.N.M.1982). An air conditioner, a stereo, a television, In re Fisher, 11 B.R. 666 (Bkrtcy. WD Okl.1981) and a garden tractor, Matter of Jones, 5 B.R. 655 (Bkrtcy. MD N.C.1980) have been held to be household furnishings and goods. Guns, In re McPherson, 18 B.R. 240 (Bkrtcy. N.M.1982), a camping trailer, In re Nason, 13 B.R. 984 (Bkrtcy.R.I.1981) and a movie camera, In re Ruppe, 3 B.R. 60 (Bkrtcy.Colo. 1980) have been held to be outside the description.

■ While this Court reads Section 522(d)(3) liberally there is no evidence that a bottle collection is necessary for a fresh start and the Court finds that the collection is not exempt property. The Court further finds that the only evidence of value is $1,575 and that is the value assigned. Debtor may exempt $400 under Section 522(d)(5) and the balance is to be added to the liquidation values.

■ There is no dispute that debtor has in his possession a certificate of deposit of the value of $18,000 and that it is unencumbered. The certificate is of value in the liquidation in its face amount.

### III

Mrs. Norman contends that the form in which the debtor does business, i.e., the Ava Drug corporation and the Ferguson Drug partnership are shams, the sole purpose of which is to shield assets from her attempts to collect the debt due her. She points to the casual nature in which the businesses are run, the collections of assets contained in the businesses and the lack of managerial and business controls as evidence in support of her contention.

The evidence shows that the Ava Drug corporation is run loosely. There appears to have been no formal corporate meetings or minutes. It owns lake front property and a boat. It paid for debtor's wedding rings and a cruise. Neither of these activities seemed to have a business purpose. Debtor runs Ava Drug without much consultation with his brother who owns half the shares. Ferguson Drug, the partnership, is run by the brother in the same fashion. Debtor receives no distribution even though he pays taxes on partnership profits. Both entities pay for insurance policies on the lives of the brothers but do not own the policies.

On the other hand the entities were established long before the dissolution of marriage action was begun. Books are kept, regular business operations are conducted and bills are paid. Both entities are solvent and there have been no substantial changes in the way business has been done after the dissolution judgment was made final. Debtor does not propose to pay any business debts in his plan. Compare *In re Graves,* 19 B.R. 402 (Bkrtcy. WD La.1982) and *Matter of Stevenson,* 28 B.R. 37 (Bkrtcy. SD Miss.1982).

■ Whether a corporation is a sham is a matter of state law.

"... piercing of the corporate veil can only occur where the separate legal entities of the corporation and the individual are used to perpetuate fraud or injustice or to accomplish an unlawful purpose". *Smith v. City of Lee's Summit,* 450 S.W.2d 485, 489 (Mo.App.1970).

■ Missouri courts seem to follow the rule that "the corporate entity will be disregarded when ... used as a subterfuge to defeat public convenience, to justify wrong or to perpetuate fraud". *Sampson Distributing Co. v. Cherry,* 346 Mo. 885, 143 S.W.2d 307, 309 (1940). Control of a corporation by a small number of shareholders does not, without more, justify disregard of the legal form. *Smith v. City of Lee's Summit,* supra. Nor are the facts that the corporate owner did not comply with the requirements of meetings, minutes or other niceties of corporate operation sufficient to justify disregard of the form. *Lynn v. Lloyd A. Lynn, Inc.,* 493 S.W.2d 363 (Mo.App. 1973). See also *In re Collins,* 75 F.2d 62 (8th Cir.1934) and *Abbott v. Public Utilities Commission,* 48 R.I. 196, 136 A. 490 (1927).

■ The Court finds that the Ava Drug is not a corporate sham and the entity is not disregarded. Mrs. Norman's complaints as to the conduct of the Ava Drug business show neither fraud or injustice within the language of the cases cited herein. The Court also finds that the partnership is a bona fide business and not a sham.

IV

Mrs. Norman contends that debtor did not file this Chapter 13 case in good faith and, therefore, it cannot be confirmed. She sets out 27 instances of what she alleges to be bad faith. These fall into broad categories. One is a failure to value assets accurately or at all. Another is mismanagement of assets during the course of administration of the case. A third suggests that the only purpose of this filing was to prevent Mrs. Norman from collecting her judgment.

There are six tests for confirmation established by Section 1325 of the Code. Four are rather mechanical and can be satisfied by an analysis of the plan and the Code. Section 1325(a)(6) requires informed speculation as to debtor's future earning capacity. It is only the issue of good faith which invites testimony as to motives and which requires the Court to evaluate the case as a whole. The applicable standard is much in dispute. *In re Estus,* 695 F.2d 311 (8th Cir.1982); *In re Terry,* 630 F.2d 634 (8th Cir.1980); *In re Burrell,* 6 B.R. 360 (DC ND Cal.1980).

Initially courts looked to the amount of payment proposed to unsecured creditors as an indication of good faith. That single test has been rejected.

"... subsection [1325] (a)(3) good faith does not impose a rigid and unyielding requirement of substantial payment to unsecured creditors. A per se minimum

payment requirement to unsecured creditors as an element of good faith would infringe on the desired flexibility of Chapter 13 and is unwarranted. Nor should the courts perfunctorily conclude that good faith is achieved whenever the minimum requirement demands a separate, independent determination ... we believe the proper inquiry should follow the analysis adopted by the Fourth Circuit [*In re Deans,* 692 F.2d 968 (4th Cir. 1982)]: whether the plan constitutes an abuse of the provisions, purposes or spirit of Chapter 13. The bankruptcy court must utilize its fact-finding expertise and judge each case on its own facts after considering all the circumstances of the case. If, after weighing all the facts and circumstances, the plan is determined to constitute an abuse of the provisions, purpose or spirit of Chapter 13, confirmation must be denied". *In re Estus,* supra, at 316.

The "public purposes served by chapter 13" are to offer "debtor and creditors a more orderly and effective alternative to grab law" by equal distribution "of the future income of the debtor" and by frustrating "the promise of unfair advantage as a substitute for sound credit collection and extension practices". 5 Collier on Bankruptcy ¶ 1300.01 (15th Ed.); House Report No. 95–595, 95th Cong. 1st Sess (1977) 117–118 reprinted in App 2 Collier on Bankruptcy (15th Ed.).

 These proceedings have been a continuation of the dissolution of marriage action in another forum. Mrs. Norman seeks to execute upon her judgment. What the evidence shows is that were she allowed to do so, she would have liquidated debtor's assets and destroyed his ability to produce income. Debtor was and is unable to pay the judgment except over time. Creating time for payment is one of the purposes of instituting a reorganization bankruptcy. The fact that the filing thwarts a creditor is an expected and intended consequence of the debtor seeking the protection of the Code. Mere filing is not evidence of bad faith. The Court finds that debtor did not have quick assets available to pay the judgment to Mrs. Norman at one time and the resort to the protection afforded by the Bankruptcy Code was not in bad faith.

 There are instances where debtor did not schedule assets. Chief among those omitted were the bottle collection and an insurance policy which debtor owned on his brother's life. Both had value as set out above. Debtor did not attempt to conceal the collection. He simply thought it was of no value. The policy premium is paid by the business. The confusion as to ownership appears legitimate. The Court finds that there was no attempt to conceal assets such as to demonstrate bad faith. See, for example, *In re Hoover,* 14 B.R. 592 (Bkrtcy. ND Ohio 1981).

 In some instances debtor has not valued assets consistent with testimony given in other proceedings. For example, in the dissolution proceeding he stated that the house was worth $80,000. There was no explanation as to the motivation for testifying in that fashion in the dissolution action. The motivation for valuation in this case is clear. The legislative history of the Code recognizes that valuation is not a constant. Senate Report No. 95–989, 95th Cong., 2d Sess. (1978) 68, reprinted in 3 App. Collier on Bankruptcy (15th Ed.) commenting on the language of Section 506(b) of the Code.

The Court is not persuaded that debtor's testimony as to the value of the residence constitutes bad faith. A substantial amount of time passed between the dissolution proceeding and these hearings. The real estate market became severely depressed. There is no evidence as to debtor's motivation for testifying in the dissolution as he did. While debtor's view of value changed significantly, it was not without support by an independent witness. In fact Mrs. Norman's appraiser testified that the house only had a value of $73,600. The inconsistency is not so flagrant in context as to persuade the Court that debtor's sole purpose was to abuse the judicial process. The inconsistency does, of course, case some doubt on the persuasiveness of debtor's val-

uation but that is a matter already determined.

Debtor did not give any value to some assets, such as the corporate stock. His argument for not doing so was legitimate and supported by a view of the evidence. As the foregoing analysis indicates the Court did not share debtor's view entirely but gave some weight to the arguments made. Debtor's contentions do not show bad faith.

Mrs. Norman also contends that debtor has carried on his life style and transacted business without court order, demonstrating an absence of good faith. For example, he cashed in his insurance and bought a new policy that had a higher premium cost. But the evidence shows that the cashed in policies had no value for the loans equaled the surrender value. Mrs. Norman failed to show how these expenditures have reduced what she would receive under the plan. She relied upon liquidation values rather than cash flow.

 The evidence shows that some of the complaints about life style, such as the remodeling of the house, are not well taken. The funds for that project came from debtor's present wife. On the other hand the cruise was purchased from corporate funds. The expenditure may have an impact on debtor's ability to fund his plan. That is a matter for the trustee to evaluate. It is not necessarily evidence of bad faith as debtor has been paying into the plan in accordance with his proposal.

 There is also some argument about the accuracy of certain attachments to the schedules concerning assets of Ferguson Drug. This case was filed as Norman d/b/a Ferguson Drug but it soon became apparent that debtor had filed as an individual and that the partnership designation and information were inappropriate. In valuing the assets of Ferguson Drug the Court relied upon accounting reports and tax returns introduced into evidence during the hearings. Complaints directed to the accuracy of the schedules are irrelevant.

 To determine the absence of good faith, the Court must look at the totality of conduct. No particular aspect, such as the amount of payment, is controlling. *In re Terry,* 630 F.2d 634 (8th Cir.1980); *In re Rimgale,* 669 F.2d 426 (7th Cir.1982); *In re Goeb,* 675 F.2d 1386 (9th Cir.1982).

Here the principal problems revolved about the treatment of Mrs. Norman's claim, the scheduling of assets and the preparation of the plan. The whole proceeding was colored by the trauma and hostility generated by the dissolution case and which were carried over into the bankruptcy. In addition, the casual way in which the debtor did business created problems in the identifying and valuing of assets. But that casualness was not adopted for the bankruptcy case. It was prevalent throughout all of his dealings and even pervaded the preparation of the initial schedules.

The Court concludes that debtor has gained no advantage from being in Chapter 13 as opposed to Chapter 7. Mrs. Norman's debt would still have to be categorized into dischargeable and non-dischargeable portions. In liquidation it is not likely that unsecured creditors will receive as much as if the debtor is allowed to pay over the term of the plan. Underlying all this is the inescapable fact that were the debtor not in bankruptcy his assets would be wiped out through execution with benefit to only one creditor. Certainly the debtor's Chapter 13 case, despite the difficulties of determining the issues raised, does fit that category of situation where an equitable distribution rather than a grab is to be favored. The Motion to Deny Confirmation for Lack of Good Faith is DENIED.

### V

There remains the question of how the plan is to be structured in view of the foregoing analysis. Mrs. Norman's claim is based upon a judgment which has accrued interest to the date of the filing of the bankruptcy. It has not accrued interest thereafter because it is undersecured. Section 506(b) of the Code. The secured portion of the claim has a value of $40,000.

The non-dischargeable portion of the claim is $25,785, with interest to the date of filing. The balance of the judgment, with interest to the date of filing, is unsecured.

The Court has found that debtor's estate, after deducting the secured debt, has $54,975 available to pay unsecured debt. The amount of the unsecured debt is roughly $70,000 and therefore will not be paid in full based upon values generated from the liquidation analysis. The Court also notes, although little emphasis was placed on this at trial, that debtor's cash flow would not enable him to pay more than what could be produced through liquidation.

Since Mrs. Norman's unsecured debt includes a non-dischargeable portion, undoubtedly the parties will want to argue as to whether the nondischargeable part· is paid in full by the prorata distribution in the plan. The Court holds that Mrs. Norman's unsecured debt is to be divided into two parts, one nondischargeable and the other dischargeable, and paid prorata. This means that some portion of the nondischargeable claim will be unpaid when the plan terminates. But there is nothing in the statutory scheme or its language that requires the nondischargeable debt to be paid in full in the plan. Section 1328(a)(2) of the Code; *In re Adams,* 12 B.R. 540 (Bkrtcy. Utah 1981); *In re Sak,* 21 B.R. 305 (Bkrtcy. ED N.Y.1982); *Matter of Bernstein,* 20 B.R. 595 (Bkrtcy. MD Fla.1982).

### VI

Mrs. Norman is directed to file an amended claim setting out the amounts due on her judgment with interest to the date of filing. Such filing is to be made on or before August 26, 1983, and a copy is to be served on debtor's attorney. Debtor is granted to September 16, 1983 to file an Amended Plan in conformance to the Order entered herein. A copy of the Amended Plan is to be served on Mrs. Norman's attorney. A hearing on confirmation will be set after the report of the trustee is received.

SO ORDERED this 22nd day of August, 1983.