**In re Jo Carleen PORTER, Debtor.**

**Bankruptcy No. 89–20650–C.**

United States Bankruptcy Court,
W.D. Missouri, C.D.

April 10, 1990.

Kenneth O. McCutcheon, Jr., Versailles, Mo., for debtor.

Michael L. McDorman, Versailles, Mo., for Roy Blackburn.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

The general issue before this Court is whether a judgment rendered against the debtor in favor of her ex-husband is a judicial lien of the type that can, and should, be avoided under 11 U.S.C. § 522(f).

The debtor herein, Jo Carleen Porter, filed a voluntary petition for relief under Chapter 7, 11 U.S.C. on November 8, 1989. On January 16, 1990 Ms. Porter filed a "Motion to Avoid Judicial Lien." She alleges that a judicial lien was created in favor of Roy Gene Blackburn, her ex-husband, by virtue of a judgment during the judicial dissolution of their marriage. Supposedly, this "judgment lien" attaches to certain real estate owned by Ms. Porter in Morgan County, Missouri.[1] She claims her ex-husband's judicial lien impairs her homestead exemption and should, therefore, be avoided.

Mr. Blackburn challenges his ex-wife's claims. In response to the above assertions, he specifically disputes Ms. Porter's claim that she is the sole owner of the above mentioned real estate. He further denies that he has a judgment lien against the property. Mr. Blackburn contends that the divorce decree left him with an "equitable interest" in the property, an interest which is not a voidable judicial lien within the meaning of § 522(f).

A hearing on the matter was held on February 14, 1990. Evidence was presented and arguments were heard at that time. The following represents this Court's Findings of Fact and Conclusions of Law regarding the controversy here in question.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Bankruptcy Code allows a debtor, in some situations, to avoid a judicial lien. In part, § 522(f)(1) provides the following:

---

1. The land is described as

A tract of land lying in the Northwest Quarter of the Southwest Quarter of Section 35, Township 42 North, Range 18 West, in Morgan County, Missouri, described by metes and bounds as follows: Beginning at the point of intersection of the East right-of-way line of Missouri State Highway Route MM with the North line of said Northwest Quarter of the Southwest Quarter, thence South 89 degrees 36″ East along the North line of said Northwest Quarter of the Southwest Quarter 89.02 feet to the Northeast corner thereof, thence South 0 degrees 16″ East along the East line of said Northwest Quarter of the Southwest Quarter 899.9 feet, thence leaving said East line and run North 83 degrees 38″ West 185.2 feet, more or less, to said East right-of-way line of Route MM, thence along said East right-of-way line in a Northerly direction to the point of beginning.

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such a lien is—
  (1) a judicial lien ...

In the event sufficient equity exists to satisfy both the debtor's claimed homestead exemption and the judicial lien attached to the property, then the judicial lien does not impair the exemption and may not be avoided. To determine whether Ms. Porter's motion should be granted or denied, three issues must be resolved:

  1) whether the judgement in question is a judicial lien;

  2) whether, and to what extent, Ms. Porter is allowed to exempt any or all of her interest homestead under applicable law; and if a judicial lien does exist in Mr. Blackburn's favor,

  3) whether enforcing the judicial lien would impair any part of an exemption to which Ms. Porter is entitled.

### 1. Creation of a Judicial Lien.

Ms. Porter contends that her ex-husband has a judicial lien against her homestead. Conversely, Mr. Blackburn, her ex-husband, claims that he has an unavoidable equitable interest in the estate, not a judgement lien. It is undisputed that Mr. Blackburn has *some interest* in the real estate in question. The question is whether Mr. Blackburn has a judicial lien against Ms. Porter's property that may be avoided by the Bankruptcy Code as an impairment of her homestead exemption.

█ *(a) Review of the State Court Decision:* The decision of the state court which granted the couple's divorce determines the nature of the interest created in Mr. Blackburn's favor. A Bankruptcy Court is required to give preclusive effect to a final state court judgement to the extent that the rendering state would recognize the decision. 28 U.S.C. § 1738 (1948) (creating

federal court obligation to afford full faith and credit to state judgements).[2]

Jo Carleen Porter and Roy Gene Blackburn were married on October 9, 1984. On or about April 18, 1988 the couple separated. Mrs. Blackburn (Ms. Porter) filed for divorce and judgment was rendered on December 7, 1988. In dividing the estranged couple's property, the court designated the land in question as "marital property." *In re The Marriage of Jo Carleen Blackburn and Roy Gene Blackburn,* No. CV988–79DR (Circuit Court of Morgan County, Missouri, Dec. 21, 1988) (Scott, J.). The term "marital property" connotes that the property was jointly owned by the couple. Under Missouri law, this is known as an "estate in the entirety."

An estate in the entirety is built upon the fiction of law that a husband and wife united in matrimony are a unified legal entity. *U.S. v. Hutcherson,* 188 F.2d 326 (8th Cir.1951). An estate by the entirety creates for a couple a unity of interest, unity of time, and unity of possession. *Morgan v. Finnegan,* 87 F.Supp. 274 (D.Mo.1950). Such an estate has no moieties—the husband and wife take the whole estate as one person, each spouse holding an entirety that is not subject to the individual debts of either spouse so long as the marriage endures. *Hutcherson v. U.S.,* 92 F.Supp. 168, *affirmed* 188 F.2d 326 (8th Cir.1951). As a general rule, a tenancy by the entirety is converted by a divorce, by operation of law, to a tenancy in common. *Barry v. Barry,* 579 S.W.2d 136 (Mo.App. 1979).

█ In the divorce decree dissolving the Blackburn's marriage, however, the court specifically held that the real property in question was "set aside *as the sole and separate property of* ... Jo Carleen (Blackburn) Porter." *In re The Marriage of Jo Carleen Blackburn and Roy Gene Blackburn,* No. CV988–79DR (Circuit Court of Morgan County, Missouri, Dec. 21, 1988). (emphasis added). Mr. Blackburn was not granted an equitable interest in the estate, but awarded an "equity val-

---

**2.** *See also In re Holiday Interval,* 114 B.R. 177, (Bankr.W.D.Mo.1989) (Koger, C.J.); *Kelleran v.*

*Andrijevic,* 825 F.2d 692 (2d.Cir.1987).

ue" in the marital home in the amount of $5,500.00. This sum was to be paid to him within a year, with interest. *Id.* at 3. Accordingly, while Mr. Blackburn's property interest would normally seem to have been converted into a tenancy in common, the state court's order specifically extinguished his legal interest in the property and left in its stead a money award in his favor.

Missouri law supports the conclusion that Mr. Blackburn's legal interest in the property was extinguished by the decree. The powers of Missouri courts under the Dissolution of Marriage Act are broad, flexible and far-reaching. A court may, for example, order a sale, and decree an exchange or conveyance, either between spouses or with a third person. *In re Marriage of Goodding,* 677 S.W.2d 332 (Mo.App.1984); *In re Marriage of Harrison,* 657 S.W.2d 366 (Mo.App.1983). The division of property fashioned by the state court in the Blackburn–Porter divorce proceeding appears to be within the wide range of power discussed above. The divorce decree left Mr. Blackburn a judgement for $5,500.00, to be paid by his ex-wife, as compensation for his "equity value" in the property.

A contrary result was reached by the Eighth Circuit Court of Appeals in *Boyd v. Robinson,* 741 F.2d 1112 (8th Cir.1984) (Ross, J., dissenting). In that case, Ms. Boyd (the debtor) commenced an adversary proceeding seeking to avoid her ex-husband's lien on their former homestead. Ms. Boyd was the sole owner of the property prior to their marriage. The state family court awarded the house to Boyd, subject to a lien in favor of Mr. Robinson (her ex-husband) in the sum of $7,000.00. The amount of the lien represented one-half of the equity the estranged couple acquired in the house during their marriage.

The Eighth Circuit held that the divorce decree did not create a judicial lien, but rather protected Mr. Robinson's "pre-existing interest" in the homestead. The Court

concluded that Mr. Robinson's interest was created prior to the divorce by operation of Minnesota law. The Court also noted that Minnesota law includes an instrument made pursuant to a decree of dissolution within the definition of a mortgage—implying that Robinson's interest was therefore not a "judicial lien." Insofar as the interest created by the family court was not a judicial lien that attached to an interest of Boyd's, the Circuit Court held that the lien was not avoidable under § 522(f)(1).

Upon review of the *Robinson* case, this Court is convinced that the result reached by the Eighth Circuit is limited to application of Minnesota law to the fact of that case. Unlike the facts in *Robinson,* the judicial decision dividing the Blackburn's estate in no way attempts to "protect" any interest of Mr. Blackburn's. In fact, the court unequivocally notes that the homestead was "set aside as the sole and separate property of ... Jo Carleen (Blackburn) Porter." Mr. Blackburn was left with a money judgement, nothing more nor less. His ownership interest in the property was extinguished. Second, Missouri law does not have a statute that characterizes an instrument created pursuant to a divorce decree as a mortgage. Finally, the decree did not, in fact, create any instrument in favor of Mr. Blackburn that could be interpreted as some sort of "mortgage" and not a judicial lien. Missouri law extrinsic to the decree created a judicial lien in Mr. Blackburn's favor to secure payment of this obligation. *See infra.* In light of the above distinctions, the conclusions reached in *Robinson* are not applicable to the controversy before this Court. *Accord In re Pederson,* 78 B.R. 264, 267 (9th Cir. BAP 1987). This result is also in harmony with the "fresh start" policy underlying § 522(f).[3]

*(b) Missouri law regarding Judgement Liens.* In Missouri, a judgement rendered by any court of record, with some exceptions, is a lien on the real estate of the person against whom it was rendered, situ-

3. *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 362 (1977); S.Rep. No. 95–989 95th Cong., 2d Sess. 76 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. *See generally In re Berrong,* 53

B.R. 640 (Bankr.D.Colo.1985); *In re Lillard,* 38 B.R. 433 (Bankr.W.D.Ark.1984); *In re Kursh,* 9 B.R. 801 (Bankr.W.D.Mo.1981).

ate in the county for which or in which the court is held. Mo.Rev.Stat. § 511.350 (1982). When a Missouri debtor owns real estate, judgement in their ex-spouse's favor arising out of the dissolution of their marriage creates a lien against such property. *Cf. In re Norman,* 32 B.R. 562, 565–566 (Bankr.W.D.Mo.1983) (Pelofsky, J.). Thus, since the family court that decided the Porter–Blackburn divorce rendered a money judgement in favor of Mr. Blackburn, a valid judgement lien attached to Ms. Porter's property under Missouri law to secure payment of that obligation.

*(c) Federal Law regarding Judicial Liens.* Even though the judgement lien was created by operation of law and not by specific language of a judicial decree, it nevertheless falls within the ambit of the Bankruptcy Code definition of "judicial lien." Section 101(32) defines a "judicial lien" as a lien obtained by judgement, levy, sequestration, or other legal or equitable process or proceeding. Because operation of § 511.350 of the Missouri Revised Statutes creates a lien after a court rendered judgement, any lien so created is clearly within the § 101(32) definition of a judicial lien.[4]

In summary, a valid judicial lien was created in Mr. Blackburn's favor against Ms. Porter's homestead. If that judicial lien should impair any exemption Ms. Porter is entitled to, it may be avoided under § 522(f). Whether Ms. Porter is entitled to exempt any part of her homestead is an issue answered by Missouri state law.

## 2. Missouri Exemptions.

The lien avoidance option of § 522(f) is available to the debtor only to "the extent that such lien impairs an exemption to which the debtor would have been entitled" under § 522(b). Accordingly, the debtor may only avoid those liens specified by § 522(f) that impair an exemption the debtor is entitled to receive under subsection (b). Under § 522(b) a debtor is entitled to elect either Federal exemptions or the exemptions of his state of domicile, unless the state of domicile has "opted out" of the federal exemption scheme. Because Missouri has "opted out," of the federal exemption scheme,[5] any exemption Ms. Porter is entitled to must be the product of Missouri law, not federal law.

Missouri law exempts from attachment and execution the homestead of every person, not to exceed the value of eight thousand dollars ($8,000.00). Mo.Rev.Stat. § 513.475 (1986)[6] Thus, Ms. Porter may

---

**4.** Though created by operation of statutory law, such a lien would is properly classified as a judicial lien, not a statutory lien:

> "statutory lien" means lien arising *solely* by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but *does not include* security interest or *judicial lien,* whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute …

11 U.S.C. § 101(47). Thus, a "judicial lien" is excluded from being categorized as a statutory lien. The two terms appear to be mutually exclusive. A lien created upon entry of a court judgement, even by operation of a statute, is a judicial lien. It cannot be characterized as a statutory lien.

**5.** Mo.Rev.Stat. 513.427 (1982). **Bankruptcy, exemptions allowed.**

> Every person by or against whom an order is sought for relief under Title 11, United States Code, shall be permitted to exempt from property of the estate any property that is exempt from attachment and execution under the law of the state of Missouri or under federal law, other

than Title 11, United States Code, Section 522(d), and no such person is authorized to claim as exempt the property that is specified under Title 11, United States Code, Section 522(d).

**6.** In part, the Homestead exemption statute reads as follows:

**Homestead defined—exempt from execution— spouses debarred from selling, when**

1. The homestead of every person, consisting of a dwelling house and appurtenances, and the land used in connection therewith, not exceeding the value of eight thousand dollars, which is or shall be used by such person as a homestead, shall, together with the rents, issues, and products thereof, be exempt from attachment and execution. The exemptions allowed under this section shall not be allowed for more than one owner of any homestead if one owner claims the entire amount allowed under this subsection; but, if more than one owner of any homestead claims an exemption under this section, the exemption allowed to each of such owners shall not exceed, in the aggregate, the total exemption allowed under this subsection as to any one homestead.

exempt $8,000.00 of the value of her homestead. To the extent Mr. Blackburn's judicial lien impairs that exemption, it may be avoided.

### 3. Impairment.

■ *3(a) Statement of the Test.* The method of calculating whether a lien of the type specified in § 522(f) impairs a debtor's exemption is a complicated process. *See In re Princiotta,* 49 B.R. 477 (Bankr.D.Mass. 1985); *In re Sajkowski,* 49 B.R. 37 (Bankr. D.R.I.1985); *In re Duncan,* 43 B.R. 833 (Bankr.D.Alaska 1984). The process, as applied by some courts, is perhaps more like a difficult algebra equation than a purely legal analysis. Cf. *In re Braddon,* 57 B.R. 677, 679 (Bankr.W.D.N.Y.1986) (setting forth three-step process to determine impairment). The statement of a general rule such as "a lien must be avoided to the extent it impairs the debtor's exemption" offers little or no guidance in how to meet the challenge of a situation where a debtor has multiple liens attached to exempt property. Hopefully, the following step-by-step analysis clearly delineates how to calculate whether a given lien of the type specified in § 522(f) impairs a debtor's exemption, or whether that lien can be satisfied out of the nonexempt cash value of the property. To determine whether an impairment exists:

*Step # 1)* all liens on the property must be ranked in order of priority;

*Step # 2)* the debtor's equity in the homestead must be determined—the debtor's equity is calculated by applying all other liens against the estimated value of the property;[7]

*Step # 3)* if the debtor has equity in the estate after Step # 2, appropriate exemption should be subtracted from the amount of the debtor's equitable interest in the property;

*Step # 4)* to calculate whether an impairment exists, all 522(f) liens should be subtracted, as ranked by their priority, from the remainder in Step # 3.

If a portion of any of the remaining liens exceeds the remainder of the previous calculation, any impairment exists. The portion of the lien that exceeded the remainder, and all lower priority 522(f) liens, should be avoided.

*3(b) Application of the Test.* Application of this analysis indicates that a portion of Mr. Blackburn's lien impairs Ms. Porter's homestead and must be avoided.

Ranking of liens. On or about October 21, 1986, the Blackburns executed a Deed of Trust in the Form of a Mortgage to secure repayment of a $23,200.00 loan from Mid–Missouri Savings and Loan Association (the Bank).[8] The Deed of Trust was properly recorded in Morgan County.[9] As of February 14, 1990 the Bank was still owed $21,388.67. The judicial lien in favor of Mr. Blackburn for $5,500.00 was created on December 21, 1988 and properly docketed in the Circuit Court Morgan County, Missouri. As the first lien against the property, Mid–Missouri Savings' Deed of Trust is entitled to priority over the subsequent judicial lien. *See generally* Mo.Rev. Stat. §§ 442.380, 442.390, 442.400 (1986) (recording of instruments affecting real estate).

Value of the property. The property in question consists of a house built on a tract of land conveyed to the couple during their marriage as a present from Ms. Porter's mother and step-father. The warranty deed was executed June 20, 1986. According to the warranty deed conveying the

Mo.Rev.Stat. § 513.475.

**7.** "Other liens" refers to all liens against the property that are not of the type set forth in § 522(f).

**8.** Generally, a deed of trust in the nature of a mortgage is a deed given in trust to a disinterested third person as security for the performance of an obligation. *See Mortgages,* 55 *Am. Jur.2d* § 15–31, 69.

Under Missouri law, a deed of trust is a lien to secure payment and nothing more. *Tipton v.*

*Holt,* 610 S.W.2d 659 (Mo.App.1981); *R.L. Sweet Lumber Co. v. E.L. Lane, Inc.,* 513 S.W.2d 365 (Mo.1974); *Coleman v. Crescent Insulated Wire & Cable Co.,* 168 S.W.2d 1060 (Mo.1943); *In re Title Guarantee Trust, Co.,* 113 S.W.2d 1053 (Mo. App.1938).

**9.** The Deed of Trust, dated October 21, 1986, was recorded in Book 204, at page 39, of the Deed of Records of Morgan County, Missouri.

 

property to the couple, the Blackburn's paid ten dollars ($10.00) "and other good and valuable consideration" for the land. No specific figure was set forth in the deed that estimated the fair market value of the property at the time of this conveyance. Evidence presented at trial indicates that the current value of the property, including the house, is approximately $30,000.00.[10]

Calculation. Ms. Porter's homestead is valued at $30,000.00. The homestead is encumbered by a consensual security interest in favor of the Bank for approximately $21,388.67. Ms. Porter is entitled to an $8,000.00 exemption under Missouri law. Thus, there remains only $611.33 of equity in the homestead to satisfy the judicial lien. ($22,000.00 minus $21,388.67. minus $8,000.00)

The second ranking lien against the homestead is Mr. Blackburn's judicial lien for $5,500.00. Subtracting the value of his lien from Ms. Porter's remaining equity in the homestead leaves a negative balance of $4,888.67. Therefore, should Mr. Blackburn's lien be fully enforced against the property, Ms. Porter's exemption would be impaired to that extent. That portion of Mr. Blackburn's lien that would impair Ms. Porter's homestead exemption, namely $4,888.67, is therefore properly subject to avoidance under § 522(f).

## CONCLUSION

Enforcement of the judgment lien held by Roy Gene Blackburn against the debtor's home would operate as an impairment of the homestead exemption afforded her under Missouri law. Given the fact that it impairs an allowed exemption to which the debtor is entitled, the judicial lien in favor of Mr. Blackburn is a lien to which § 522(f) applies. Based on the foregoing, the debtor's Motion to Avoid the lien is hereby Granted in the amount which would impair Ms. Porter's state law homestead exemption, i.e., $4,888.67.

SO ORDERED.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.

10.  The property was valued by Ms. Porter in her bankruptcy schedules at $23,500.00. At trial however, her ex-husband testified that the property had an estimated value of $35,000.00 at the time of their separation. Based on this conflicting evidence, the Court finds that $30,000.00 is a reasonable estimate of the value of the property.